[L. A. No. 7099. In Bank.—September 13, 1923.]

UNION TOOL COMPANY, Respondent, v. THE FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES et al., Appellants.

[1] BANKS AND BANKING—FORGED CHECKS—WHEN BANK LIABLE.—As between a bank and its depositor the bank is only warranted in paying out the money of the depositor on his genuine order and in accordance therewith. If payment be made on a forged check, with no attendant circumstances sufficient to create an equitable estoppel as against the depositor, or there has been no prior negligence by the depositor contributory to the payment of the check, no degree of care on the part of the bank will excuse it from liability.

[2] ID.—EXAMINATION OF RETURNED CHECKS—COMPARISON OF NAMES OF PAYEES.—Examination by a depositor of a bank of paid checks returned by the bank to him should include a comparison of the names of the payees of the checks with the check register; and where the bank returns the canceled checks with a statement of the account, it is the duty of the depositor to examine such checks within a reasonable time and to report any forgeries or alterations which he has discovered, failing in which he cannot, if his failure has resulted in detriment to the bank, dispute the correctness of the payments shown.

[3] ID.—NEGLIGENCE OF BANK—FORGED INDORSEMENTS.—Although a depositor of a bank is negligent in not making a thorough examination of returned checks, the depositary bank may not escape liability for the payment of amounts paid on forged checks unless it has itself been free from negligence; and it being the duty of a bank to determine the genuineness of the indorsements on a check before paying it, where it pays on a forged indorsement, it is liable to the depositor therefor, notwithstanding he is subsequently negligent in failing to make the proper examination and comparison of returned checks.

[4] ID.—LIABILITY OF BANK PAYING FORGED CHECK.—Where a bank other than the one in which the account is deposited pays a check which has been altered on its face with reference to the description of the payee and the indorsement thereon forged, and sends the check through the clearing-house for payment by the bank in

3. Liability of bank which pays forged check, notes, 94 **Am. St. Rep.** 642; Ann. Cas. 1917D, 1058; 27 **L. R. A.** 635; 20 **L. R. A. (N. S.)** 79; **L. R. A.** 1918F, 282.

which the deposit is, it is in no better position than the latter bank, as it is the duty of each to investigate and determine that the person to whom payment is made is the legal holder of the check and entitled to receive payment.

[5] ID. — ALTERATION AND FORGERY OF CHECK — STATUTE OF LIMITATIONS.—Where checks as originally drawn were first altered by changing the name of the intended payee and afterward by fraudulently indorsing the payee's name thereon, those acts amounted to forgery and the special provision of subdivision 3 of section 340 of the Code of Civil Procedure, requiring action therefor to be brought within one year, applies, where the gravamen of the action is the effect of the alteration and forgery of the indorsement of the check as altered and the subsequent conduct of the drawer with relation to the canceled checks after they came into its possession.

[6] ID.—FORM OF ACTION—STATUTE OF LIMITATIONS.—It is not so much the form of an action as it is the nature of the right sued upon which determines the applicability of the statute of limitations.

[7] ID.—FORGERY—WHAT CONSTITUTES.—Any material alteration of a writing with intent to defraud anyone, so as to make the writing appear to be different from what it was originally intended to be, is a forgery.

[8] ID.—FORMS OF ACTION—STATUTE OF LIMITATIONS—SECTIONS 340, 348, CODE OF CIVIL PROCEDURE.—Where an action is one to recover money deposited with a bank and not paid out by it on a check claimed to have been forged or raised, the provisions of section 348 of the Code of Civil Procedure, providing that there is no time limit for bringing the action, apply; but to the special case where the action arises because of payment on a check which the plaintiff asserts was forged or raised, the special provision of subdivision 3 of section 340 of the Code of Civil Procedure, prescribing one year in which to bring the action, applies.

[9] ID.—TIME FOR STATUTE TO BEGIN.—Where canceled checks and a statement of his account with the bank are regularly furnished to the depositor, the statute of limitations begins to run against an action on account of an alleged forged or raised check from the time the check was returned to the depositor as a voucher supporting the payment made by the bank.

[10] ID.—RELATION OF BANK AND DEPOSITOR—DEBTOR AND CREDITOR. The relation of a bank and its depositor arising out of a general

10. Necessity of demand in order to start statute of limitation against action for a bank deposit, notes, 136 **Am. St. Rep.** 486; 2 **L. R. A. (N. S.)** 571.

deposit is that of debtor and creditor, the deposit creating a debt of the bank payable as and when demand for payment is made; and there is no default on the part of the bank, and hence no accrual of a cause of action against it to recover the balance of a general deposit, until its payment is demanded or there is some act on the part of the bank dispensing with such demand.

[11] ID.—DEMAND—WAIVER—ACCRUAL OF CAUSE OF ACTION—STATUTE OF LIMITATIONS.—Where a bank either in terms or in effect has denied liability to the depositor for the amount in question, this is an act on the part of the bank dispensing with such demand, the cause of action accrues, and the statute of limitations, where one is applicable, is set in motion.

[12] ID.—STATEMENTS BY BANK—DUTY TO EXAMINE.—It is the duty of a depositor to examine the statement and vouchers returned to him by the bank, and to report at once any error in the one and any forgeries or alterations of the other, and if he does not do this within a reasonable time the account as rendered becomes an account stated between the bank and him.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed as modified.

The facts are stated in the opinion of the court.

Lawler & Degnan for Cross-complainant and Appellant.

Page & Hurt and Eugene D. Williams for Intervener and Appellant.

Andrews, Toland, Gregg & Andrews, A. V. Andrews and H. W. Reynolds for Respondent.

KERRIGAN, J.—By the judgment in this case the plaintiff recovered from the defendant the sum of $18,576.98 and costs. The defendant recovered a like amount and costs from the intervener. Both the defendant and the intervener appeal. The facts appear to be as follows: For many years prior to September, 1918, the plaintiff had been a depositor of The Farmers and Merchants National Bank,

12. Duty of depositor having checking account with a bank to examine pass-book and vouchers upon their return from the bank, notes, 17 Ann. Cas. 122; Ann. Cas. 1914D, 465; 15 A. L. R. 159; 27 L. R. A. 426; 36 L. R. A. 539.

the defendant. At the time the account was opened the treasurer of the plaintiff corporation received a pass-book which contained what purported to be an "Agreement with Depositor," and which provided in substance that within ten days after the receipt of returned canceled checks or vouchers drawn by the depositor, the latter would make an examination of such returned checks and vouchers, and satisfy itself of their correctness, genuineness, and regularity, both as to the face and indorsements, and that a failure of the depositor to report in writing anything to the contrary to the bank within ten days after such delivery would be deemed positive and conclusive evidence that the examination had been made and the account and checks and vouchers had been found correct. This so-called agreement was not read by the officer of the plaintiff corporation opening the deposit, nor did the company or any officer sign the purported agreement, nor was it called to their attention or known by them. At the same time that the account was opened arrangements were made to the effect that statements would be returned to the plaintiff three times a month, and statements were so returned. Each time such a statement was returned it was accompanied by the checks or vouchers, and a receipt was given therefor in the following words: "Received from the Farmers and Merchants National Bank of Los Angeles, Cal., statement of account and all canceled vouchers for the months indicated. I agree to examine same carefully and report all differences or missing vouchers, if any, within ten days. Otherwise the account may be considered correct." Each statement so received contained at the top the following words: "Please examine at once and report any differences. If not reported on within ten days the account will be considered correct."

In the latter part of August, 1918, the plaintiff employed as traffic manager a man by the name of Davis. Among his duties was that of checking the freight bills and preparing a distribution to the particular accounts of the charges therein contained, and thereupon submitting to the treasurer of the company the freight bills, properly approved by himself and approved as to distribution by the assistant secretary, together with a vouchered check made out in payment of such freight bills and complete except as to the signatures of the president and secretary. Thereupon the secretary examined

the freight bills to see that they corresponded in amount with the check, and that they appeared to be regular, and attached, the signature of the president by rubber stamp to the check and then completed the same by signing as secretary. The assistant secretary made no other examination of the other vouchers nor any other check of the vouchers than the distribution check. After the check had been signed it was entered by the bookkeeper upon the check register, showing the date, name of payee, the amount of the check, its number, and the account to which it was charged; but the date, name of payee, the amount of the check, the account to which it was charged and its number were entered in the check register in numerical order according to the number of the check.

Soon after entering the employ of the plaintiff Davis conceived the scheme of forging freight bills at intervals and presenting such spurious freight bills so that they appeared to be valid bills duly approved. On the fourth day of September, 1918, or about a week after Davis was employed, he caused a check for the sum of $2,405.75 to be drawn against the Union Tool Company's account in The Farmers and Merchants National Bank in favor of "C. H. Mueller, Agent, Pacific Electric Railway Co., Torrance, Cal." This check accompanied a voucher and a freight bill, which freight bill had been prepared by Davis himself and which did not actually represent a claim made by the Pacific Electric Railway Company against the Union Tool Company. The name of the payee was the customary name used by the Union Tool Company in making payments to the Pacific Electric Railway Company. This check, having been duly signed by the proper officers of the company, was entered in the check register. In the place provided in the check register for the name of the payee the words "Pacific Electric Ry." were written. Davis, upon receiving the check, erased the words "Agent, Pacific Electric Railway Co., Torrance, Cal.," thereby making the check payable to C. H. Mueller. Davis then indorsed the name of C. H. Mueller on the back of the check, and wrote underneath thereof his own name—G. C. Davis. This check was deposited by Davis in the banking-house of the intervener, Hellman Commercial Trust and Savings Bank, and was indorsed by it with its clearing-house stamp, and the check in due course was cleared through the Los Angeles Clearing House, and on September

5, 1918, was paid by The Farmers and Merchants National Bank, upon which the check was drawn. The indorsement by the Hellman Commercial Trust and Savings Bank was made by it without taking any steps to verify the genuineness of C. H. Mueller's indorsement. Thereafter other checks were similarly fraudulently prepared, indorsed, and cashed, amounting with the first check, together with interest, to the aggregate sum of $18,576.98. Each of the checks in question separately passed under the examination of the Hellman Commercial Trust and Savings Bank and then, as to the face thereof, under the examination of The Farmers and Merchants National Bank. Whatever an expert inspection of the face of the checks in question would disclose concerning any erasure after the name of the payee "C. H. Mueller" was within the power of the respective banks to discover by such inspection. These checks were paid from time to time, beginning September 4, 1918, until The Farmers and Merchants National Bank discovered the forged indorsements on January 12, 1920. In the meantime no effort was made by The Farmers and Merchants National Bank at any time to verify the genuineness of the indorsement of C. H. Mueller.

When the packages of canceled checks with the statement of The Farmers and Merchants National Bank were returned to the Union Tool Company, the bookkeeper of the Union Tool Company arranged the checks in numerical order and then checked them by number and amount against the corresponding numbers and amounts shown in the check register, and at the same time observed the signatures of the officers of the Union Tool Company. No comparison was made of the face of the check with the check register either as to date, or name of payee, nor was any examination of the back of the check made by any person in the employ of the plaintiff company.

The plaintiff sued The Farmers and Merchants National Bank of Los Angeles for the balance upon the checking account. The defendant admitted all the allegations of the complaint, except as to the amount paid out by the defendant on orders of plaintiff. There were also certain affirmative defenses pleaded, including estoppel of plaintiff by reason of the so-called agreements to which reference has been made, and because of its not having claimed irregulari-

ties within ten days after the paid checks were returned to plaintiff; also, for the same reason, that the plaintiff as a matter of law was guilty of negligence; and that the statute of limitations applied as to the first four of the forged checks. By stipulation the judge of the trial court was permitted to decide that it would be inequitable for either the defendant or the intervener to plead the statute of limitations as to the fourth check, of date January 27, 1919, and no complaint is made by either of the appellants as to the court's ruling as to that particular check. The court gave judgment: (1) In favor of plaintiff and against The Farmers and Merchants National Bank of Los Angeles for the sum of $18,576.98; and (2) in favor of The Farmers and Merchants National Bank of Los Angeles and against the intervener Hellman Commercial Trust and Savings Bank for the same amount.

[1] It is a well-settled general rule that as between a bank and its depositor the bank is only warranted in paying out the money of the depositor on his genuine order and in accordance therewith. If payments be made on a forged check, with no attendant circumstances sufficient to create an equitable estoppel as against the depositor, or there has been no prior negligence by the depositor contributory to the payment of the check, no degree of care on the part of the bank will excuse it from liability. (*Janin* v. *London & San Francisco Bank,* 92 Cal. 14 [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100]; *Otis Elevator Co.* v. *First Nat. Bank of San Francisco,* 163 Cal. 31 [41 L. R. A. (N. S.) 529, 124 Pac. 704]; *Los Angeles Investment Co.* v. *Home Sav. Bank,* 180 Cal. 601 [5 A. L. R. 1193, 182 Pac. 293].)

[2] One of the defenses here is that the plaintiff was negligent in its duty in not making a proper examination of the accounts and the vouchers which were respectively rendered and returned to the plaintiff by The Farmers and Merchants Bank, and that because of such negligence and the failure of the plaintiff to discover the forgery and thereupon to report same to The Farmers and Merchants Bank, the plaintiff should be estopped, because thereby The Farmers and Merchants Bank was induced to pay and did pay all subsequent checks in consequence of the silence of the plaintiff when it was its duty to speak—in other words, that The Farmers and Merchants Bank was misled to its injury by reason of the fault of the plaintiff. A comparison was made

by the plaintiff as to the number and the amount of the several checks returned, with the stub of the check register, and of the genuineness of the signatures of the officers of the plaintiff company, and the correctness of the account as between the plaintiff and The Farmers and Merchants Nattional Bank was duly ascertained.

An examination of the returned checks should have included a comparison of the names of the payees of the checks. The check register showed, as of course it should, the names of the payees of the checks, and an examination of returned canceled checks which did not cover a comparison of the names of the payees, would, it appears to us, be, as a matter of prudence, incomplete. In this case, if that had been done, it would have led to the discovery of the first forged check, and the losses subsequent to the payment thereof would not have occurred. It was the duty of the plaintiff, under an obligation imposed by general law and under the terms of its receipts for the canceled checks, to make such an examination and comparison.

In 7 C. J., at page 687, the rule is thus stated: "Although there are a number of authorities to the contrary, the weight of authority, and perhaps of reason, supports the view that, when a depositor's pass-book has been written up and returned to him with the canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time and to report any forgeries or alterations which he has discovered, failing in which he cannot, if his failure has resulted in detriment to the bank, dispute the correctness of the payments shown." (See, also, 3 R. C. L., 533.)

[3] Assuming that the plaintiff was negligent in not making a more thorough examination of the returned checks, although the trial court found it was not negligent, still the depositary bank may not escape liability for the payment of amounts paid on forged checks unless it has itself been free from negligence. Here the finding of the trial court that the bank was negligent is clearly sustained by the evidence. It was the duty of the bank to determine the genuineness of the indorsements. This was a duty which devolved solely upon the bank. In the case of *Los Angeles Investment Co.* v. *Home Sav. Bank, supra,* the court, after having stated the law with reference to the duty of a depositor in circumstances similar to those in this case, quoted with approval

from the case of *Shipman* v. *Bank of the State of New York*, 126 N. Y. 318 [22 Am. St. Rep. 821, 12 L. R. A. 791, 27 N. E. 371], the following: " 'The defendant's contract was to pay the checks only upon a genuine indorsement. The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must, at its own peril, determine that question. It has the opportunity, by requiring identification when the check is presented, or a responsible guaranty from the party presenting it, of ascertaining whether the indorsement is genuine or not. When it returns the check to the depositor, as evidence of a payment made by his direction, the latter has the right to assume that the bank has ascertained the fact to be that the indorsement is genuine.' " (Citing many cases.) The bank being primarily negligent in regard to the indorsement, as well as to the alteration of the check or checks, it follows that even if the plaintiff had been negligent in failing to make a proper examination of the canceled checks the defense of estoppel must fail. Before a defendant bank will become entitled to escape its liability for payment of a forged check it must be shown that the bank itself was free from negligence. In *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96 [29 L. Ed. 811, 6 Sup. Ct. Rep. 657, see, also, Rose's U. S. Notes], it is said that "Of course, if the defendant's officers, . . . could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, *even if the depositor omitted all examination of his account.*" (Italics ours.) In another case (*Morgan* v. *United States Mortgage & Trust Co.*, 208 N. Y. 218 [Ann. Cas. 1914D, 462, L. R. A. 1915D, 741, 101 N. E. 871]), it is said: "It is, however, permitted to a bank to escape liability for repayment of amounts paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payments *and that it has been free from any negligence.*" (Italics ours.)

The general proposition is aptly put in the case of *National Dredging Co.* v. *President etc. of Farmers Bank*, 6 Penne. (Del.) 580, 591 [130 Am. St. Rep. 158, 16 L. R. A. (N. S.) 593, 69 Atl. 607], as follows: "In every case where suit is brought by a depositor to recover from a bank money deposited by him, which the bank has paid out otherwise than in conformity with his orders, and the bank sets up the defense that it is nevertheless entitled to charge the de-

positor with such payments, because of conduct of the depositor subsequent to such payment, the preliminary question to be determined is whether the bank was or was not guilty of negligence in making the payments. If it were negligent, if its officers be found to have failed to exercise due and reasonable care in detecting the forgery or fraud, then the subsequent negligence of the depositor, his failure to perform his duty in examining his pass-book and vouchers with reasonable care and report to the bank in a reasonable time any errors or mistakes, would constitute no defense. It is needless to cite cases in which this doctrine is explicitly stated, because they are all in accord upon this point, and the doctrine is assumed in every case where it is not stated.''

[4]   The intervener, Hellman Commercial Trust and Savings Bank, can be in no better position with respect to the defenses pleaded than can The Farmers and Merchants Bank; they both rest upon the same facts and the same law with reference thereto. In a case involving a similar principle it was said: ''The defendant bank is in no better attitude to defend against the government's demand than would have been the banks which advanced the money to McCoy upon his forged indorsements. Those banks had the opportunity to discover the facts and it was their duty to do so. Had they investigated, they would have discovered that the holder of those checks had no legal title to them, and was not an authorized payee.'' (*United States* v. *National Bank of Commerce of Seattle*, 205 Fed. 433, 437 [123 C. C. A. 501]. See, also, *Harmon* v. *Old Detroit Nat. Bank*, 153 Mich. 73 [126 Am. St. Rep. 467, 17 L. R. A. (N. S.) 514, 116 N. W. 617].) The evidence shows that the intervener, Hellman Commercial Trust and Savings Bank, failed to exercise proper care to ascertain whether or not C. H. Mueller had indorsed any of the checks here involved. It in effect, took the word of the forger, paid him the money, guaranteed all indorsements on the checks, and forwarded them through the clearing-house for the collection from The Farmers and Merchants Bank. Referring again to the case of *United States* v. *National Bank of Commerce of Seattle, supra,* it is there held that where a forged check was cashed by a bank other than that on which it was drawn, such bank was negligent in failing to discover the forgery and in not requiring identification of the payee, and could not urge in

192 Cal.—4

defense of its liability to refund the money that the drawer of the check was negligent in failing promptly to discover the fraud. To quote from the opinion in that case, it was said: "It was their duty to ascertain whether there was such a person as the payee named in the checks, and to know that the person who presented the checks was entitled to receive the payment thereof. They made no investigation, required no identification, and took no precaution. They paid the money negligently, and at their own risk, and the defendant bank in choosing to rely upon the identification of the payee by the banks which cashed the checks did so at its own risk." And in this respect The Farmers and Merchants Bank was also guilty of negligence, for, although thoroughly equipped to do so, it took no pains to learn if the indorsements on the checks were genuine, depending, according to the custom of banks, where checks have passed through clearing-houses, upon the responsibility of the preceding indorsements. The cashier of the bank testified: "When a check came to it through a clearing-house, as a matter of fact we determine that the clearing-house stamp was on there and we are not interested in the genuineness or sufficiency of it . . . in other words, we depend entirely upon the responsibility of the preceding indorser."

When it is remembered, as disclosed by the record, that no attempt was made by the forger to imitate in any way the handwriting of Mr. Mueller; that the forger was financially irresponsible; that all the persons connected with the matter were easily accessible; that a careful inspection of the face of the checks would have disclosed the alteration—these matters taken in connection with the lack of diligence on the part of the depositary bank to determine the genuineness of the checks, clearly show that the depositary bank was guilty of actual negligence.

[5] It is contended by appellants that because the first three checks in question were paid by The Farmers and Merchants Bank more than one year prior to the date of the filing of the complaint herein, the action as to them is barred under a part of the provision of subdivision 3 of section 340 of the Code of Civil Procedure, which fixes at one year the time for commencement of "an action by a depositor against a bank for the payment of a forged or raised check."

Respondent's position is that its action is not for the payment of a forged check or checks, but that it is for the col-

lection of a deposit based upon a demand for payment and a refusal of the demand, which would bring the case under an entirely different section of the code relating to the time for the commencement of civil actions. Moreover, respondent claims that there was no forgery of the check itself, but that the offense consists in the forgery of the indorsement and consequently that in no event could the action be one against the bank for the payment of a forged or raised check. While there is nothing in either the complaint or the answer herein which would indicate that a forged check was in any manner connected with the action, the complaint in intervention by the Hellman Commercial Trust and Savings Bank and the cross-complaint by The Farmers and Merchants Bank do raise an issue as to the alteration and payment of the checks in question. The case as presented on the trial hinged not so much upon the direct allegations of the complaint as it did upon the case as stated in the cross-complaint and the complaint in intervention. [6] It is not so much the form of the action as it is the nature of the right sued upon which determines the applicability of the statute of limitations. (*Bell* v. *Bank of California,* 153 Cal. 234, 243 [94 Pac. 889].) The case of *Otis Elevator Co.* v. *First Nat. Bank, supra,* at page 37, contains a statement of law which is applicable here. It is as follows: "It must be remembered, however, that the purpose of the action was to determine whether or not the plaintiff had a certain balance in defendant's bank. The payment of the two checks being pleaded by way of defense, issue was completely joined. The forgery of the checks and plaintiff's conduct with reference to their preparation and custody were matters arising in connection with the offered proof of the principal allegation in the answer and plaintiff's attempted refutation of it. It was not necessary that any issue upon the alteration of the checks should be made by the pleadings." Neither the question of how much money was actually deposited by the plaintiff with The Farmers and Merchants Bank nor how much money was actually withdrawn therefrom, outside of the checks here in question, was ever in dispute. The gravamen of this action was concerning the effect of the alteration of these checks, the forgery of the name of the payee as altered, and the subsequent conduct of the plaintiff with relation to the canceled checks after they came into its possession. It in-

volved in reality a question of forgery and the effect thereof —nothing more and nothing less.

The statute to which reference has been made must be taken, if possible, in its natural and usual sense; it should not receive a strained construction. The checks as originally drawn were first altered by changing the name of the intended payee and afterward by fraudulently indorsing the payee's name thereon. Those acts certainly amounted to forgery within the definition of that term as found in any of the citations dealing with such an offense to which attention has been called by counsel. [7] Any material alteration of a writing with intent to defraud anyone, so as to make the writing appear to be different from what it was originally intended to be, is a forgery.

This action was commenced more than one year after the return to plaintiff of the first three of the forged canceled checks, aggregating $4,221.37.

Subdivision 3 of section 340 of the Code of Civil Procedure was amended in 1905 to provide that all actions "by a depositor against a bank for the payment of a forged or raised check" must be brought "within one year." This, as a later enactment and as one dealing with a special case, must, as respects the special class of actions within its terms, be held to control the general rule expressed in section 348 of the Code of Civil Procedure, that "to actions brought to recover money . . . deposited with any bank . . . there is no limitation." [8] In other words, where the action is one to recover money deposited with a bank and not paid out by it on a check claimed to have been forged or raised, the provisions of section 348 applies. To the special case where the action arises because of payment on a check which the plaintiff asserts was forged or raised, the special provision of subdivision 3 of section 340 applies. The case at bar is plainly of the latter class.

This, however, presents the question when the statute begins to run against an action by a depositor against a bank for the payment of a forged or raised check. The plaintiff contends that it begins to run only from the date when the depositor demands payment to him of the amount paid out by the bank on the check he claims was "forged." [9] It is our view that where as here the canceled checks and a statement of his account with the bank are regularly furnished to the depositor, the statute begins to run from the time the

alleged "forged or raised" check was delivered to the depositor as a voucher supporting the payment made by the bank.

[10]   It is, of course, the settled rule that the relation between a bank and its depositor arising out of a general deposit is that of debtor and creditor.   The deposit creates a debt of the bank payable as and when demand for payment is made.   Accordingly, it is the general rule that there is no default on the part of the bank, and hence no accrual of a cause of action against it to recover the balance of a general deposit until its payment is demanded or there is some act on the part of the bank dispensing with such demand. (*Mitchell* v. *Beckman,* 64 Cal. 117 [28 Pac. 110] ; 7 Cor. Jur. 663, sec. 366, and cases cited; 3 R. C. L. 569, and cases cited; note, 2 L. R. A. (N. S.) 571, and cases cited.)   But the basis of the rule, and indeed the statement of it, shows the proper limitations.   A demand is ordinarily necessary because until it is made and refused there is no denial by the bank of its liability to pay, and no default out of which a cause of action could arise.   [11]   Where, however, the bank either in terms or in effect has denied liability to the depositor for the amount in question this is an "act on the part of the bank dispensing with such demand," the cause of action accrues, and the statute of limitations, where one is applicable, is set in motion.

[12]   The whole purpose of submitting monthly or regular statements to depositors, together with canceled checks as vouchers in support of them, is to direct the attention of the depositor to the state of his account, to the credits in his favor, the charges against it and to the vouchers supporting these charges.   It is his duty to examine the statement and the vouchers, and to report at once any error in the one and any forgeries or alterations of the other.   If he does not do this within a reasonable time the account as rendered becomes an account stated between the bank and him.   (*Los Angeles Investment Co.* v. *Home Sav. Bank, supra;* 3 R. C. L. 532–534, 537.)   The submission of a check as a voucher and of a statement in which its amount is charged to the depositor's account is notice to him that the bank treats that check as the basis of a valid charge to his account; that it has charged it to that account, and, of course, that it no longer holds itself liable to him for the amount so charged.   It is a denial of liability for the amount paid out

on the check, and we cannot doubt that it sets in motion the period of limitations prescribed by subdivision 3 of section 340. (See *Glassell Development Co.* v. *Citizens Nat. Bank of Los Angeles,* 191 Cal. 375 [28 A. L. R. 1427, 216 Pac. 1012].)

The judgment of the lower court should be modified by reducing the amount thereof to be recovered by the plaintiff from the defendant, and by the defendant from the intervener, by the sum of $4,221.37, with interest thereon from the fourth day of March, 1920, at the rate of seven per cent per annum; otherwise the judgment should be affirmed, and it is so ordered.

Lennon, J., Seawell, J., Waste, J., Wilbur, C. J., Lawlor, J., and Richards, J., *pro tem.,* concurred.