[L. A. No. 21055. In Bank. Nov. 9, 1950.]

CALIFORNIA MILL SUPPLY CORPORATION (a Corporation), Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

E. Briggs Howorth for Appellant.

Samuel B. Stewart, Jr., Hugo A. Steinmeyer, G. L. Berrey and George L. Beckwith for Respondent.

Morrison, Hohfeld, Foerster, Schuman & Clark as Amici Curiae on behalf of Respondent.

SPENCE, J.—Plaintiff is the drawer of a series of checks which it had issued upon the fraudulent representations of one of its employees. Defendant, Bank of America National Trust and Savings Association, is the collecting bank which had cashed and endorsed said checks, with a guarantee of prior endorsements, and had collected thereon from the drawee bank, which in turn had charged said checks to plaintiff's account. Plaintiff did not discover the fraud of its employee for more than a year after the payment by the drawee bank of the last check of the series, at which time its right of action, if any, against the drawee bank was barred by the statute of limitations. (Code Civ. Proc., § 340, subd. 3.) Plaintiff then brought this action seeking to recover directly against defendant as the collecting bank and the endorser of said checks. Upon a trial by the court, the findings and judgment were in favor of defendant, and plaintiff has appealed.

There is no dispute concerning the facts. The dishonest employee was in charge of plaintiff's purchasing department. He was responsible for the pricing and purchasing of junk material, which was purchased for processing by plaintiff. He was also responsible for the making of advances to so-called credit dealers. He had no authority to sign checks, but he was charged with the duty of preparing invoices, receipt tickets, and the like, as well as preparing the accompanying check forms for signature by one of plaintiff's authorized officers. The fraudulent transactions, involving eight checks, occurred between July 5, 1944, and May 12, 1945. These checks were drawn upon the Security-First National Bank of Los Angeles and were duly signed by one of plaintiff's authorized officers upon the fraudulent representation by

the dishonest employee that they represented bona fide transactions with existing persons or entities named as payees. None of said checks was delivered to the named payee by said employee, whose purpose in each instance was to obtain the proceeds of the check through fraudulent means. As to seven of the checks, the endorsements of the named payees were forged. As to the eighth check, which was made payable to ''Benicia Arsenal,'' the employee caused it to be altered after it had been drawn, by changing the named payee to ''S. Oster, c/o Benicia Arsenal.'' This latter check was then endorsed by S. Oster, an existing person, and negotiated. In each instance, the name of the payee appearing upon the check when signed by plaintiff's authorized officer was the name of a real party with whom plaintiff had previously had business dealings.

Plaintiff's complaint set forth three causes of action with respect to each check, with the exception of the one which was made payable to ''Benicia Arsenal'' and was then altered, as to which latter check the first alleged cause of action was not pleaded. Plaintiff's alleged causes of action were based: (1) upon the theory of an express contractual obligation to plaintiff resulting from defendant's endorsement and guarantee of prior endorsements; (2) upon the theory of defendant's conversion of the sums collected by defendant from the drawee bank; and (3) upon the theory of money had and received for the use and benefit of plaintiff. Defendant denied all liability and alleged certain separate defenses, including (1) that the checks were payable to ''fictitious persons'' and were never delivered to any payee; that each was negotiated to defendant for value without any knowledge by defendant of any infirmity; (2) that the employee prepared the checks within the scope of his employment, with knowledge that the named payees were not entitled to payment and with intent to forge the payees' names; that each was negotiated to defendant for value and received by defendant without knowledge of any defense, and without negligence on the part of defendant. The trial court found these separate defenses to be true and entered judgment that plaintiff take nothing by its action.

Turning first to the consideration of the seven checks upon which the endorsements were forged, the question presented is whether the drawer of a check may proceed directly against the collecting bank under the circumstances above set forth. In this connection, the parties discuss the claimed ''fictitious''

status of the payee in the light of the decision reached in *Metropolitan Life Insurance Co.* v. *San Francisco Bank,* 58 Cal.App.2d 528 [136 P.2d 853]. In line with the legal principles involved and discussed in the cited case, we are of the opinion that plaintiff may not prevail here, and that the trial court correctly so concluded.

Preliminarily, it must be noted that these checks were not payable to bearer as the governing law was construed in *Security First Nat. Bank* v. *Bank of America,* 22 Cal.2d 154 [137 P.2d 452]. In that case, as here, a dishonest employee was authorized to prepare checks for signature by a designated corporate officer. He presented checks purporting to be supported by proper ''debit slips'' from the accounting department and drawn to the order of an actual person, who, in fact, knew nothing of the transactions and had no interest in the proceeds thereof. Under section 3090, subdivision 3, of the Civil Code, as it then stood, an instrument was payable to bearer when ''. . . payable to the order of a fictitious or non-existent person, and such fact is known to the person making it so payable . . .'' While recognizing the settled rule that a payee may be an ''actual person'' and nevertheless regarded as a ''fictitious payee'' where ''it is not intended that the person named on [the] face [of the check] have any interest in it,'' (p. 157) it was held that the checks there in question were not ''bearer'' paper because the signing officer— ''the person making [the checks] so payable''—did not know of the fiction and it was his knowledge, as the person authorized to sign, rather than that of the person authorized to prepare, that governed the character of the instruments within the purport of the cited code section (p. 158).

In 1945 the Legislature amended subdivision 3 of section 3090 of the Civil Code to provide that an instrument is payable to bearer ''when . . . payable to the order of a fictitious or nonexisting or living person not intended to have any interest in it and such fact was known to the person making it so payable or *known to his employee or other agent who supplies the name of such payee.*'' (Emphasis added.) However, the transactions here involved occurred prior to the quoted amendment, and as the applicable section theretofore stood and was construed in *Security-First Nat. Bank* v. *Bank of America* [1943], *supra,* the checks in question were not bearer paper. It is not disputed that plaintiff herein had a cause of action against the drawee bank for the amount of its loss (*Los*

*Angeles Inv. Co.* v. *Home Sav. Bank,* 180 Cal. 601, 604 [182 P. 293, 5 A.L.R. 1193] ; *Union Tool Co.* v. *Farmers & Merchants Nat. Bank,* 192 Cal. 40, 46 [218 P. 424, 28 A.L.R. 1417]), but apparently no such suit was brought in view of the effective bar of the one-year period of the statute of limitations above mentioned. (Code Civ. Proc., § 340, subd. 3.) The present action was commenced against defendant, the collecting bank, a little more than a year after the date of the last forgery committed by plaintiff's employee.

As premise for denial of its direct liability to plaintiff, defendant relies heavily upon *Metropolitan Life Ins. Co.* v. *San Francisco Bank, supra,* 58 Cal.App.2d 528. There the appeal arose from a judgment of dismissal following the sustaining of the demurrer of the collecting bank to the amended complaint of the drawer. By its pleading, plaintiff alleged that it had been induced, through the fraud of an employee "who had no authority himself to issue checks on [its] bank account, to draw and issue checks . . . payable to various 'fictitious persons not known to plaintiff to be fictitious persons and having no interest whatsoever in or to any part of the proceeds of said checks' ''; that the employee fraudulently secured possession of the checks and endorsed "the name of the fictitious payee"; that "The San Francisco Bank [defendant collecting bank]'' cashed the checks for the employee, guaranteed all prior endorsements and then "presented" the checks to plaintiff's bank [the drawee], "which paid each check and in turn debited the amount thereof to the bank account of plaintiff.'' (P. 530.) It was conceded that under these allegations the checks were not payable to bearer (Civ. Code, § 3090, subd. 3, as it stood prior to the 1945 amendment, *supra*), and that the one-year period of limitations barred "an action by plaintiff, as a depositor, against [the drawee] bank for the payment of checks that bore forged endorsements.'' (P. 531; Code Civ. Proc., § 340, subd. 3.)

Plaintiff on the appeal urged that it was entitled to recover from the collecting bank upon either a contractual or a conversion theory. After noting that "plaintiff, as drawer, was entitled to recover against the . . . drawee [bank] upon the general contractual obligation of the latter to plaintiff as its depositor . . . [and] that in the event that plaintiff, as drawer, had recovered against the . . . drawee [bank], the latter would have been entitled to recover against the . . . collecting bank, upon the written guarantee of the prior

endorsement," it was there said at pages 532 and 533 that "no authority" could be found "in this state, however, for permitting the plaintiff, as drawer, to recover directly against . . . the collecting bank upon any theory, contractual or otherwise" and that "there [was] respectable authority in other jurisdictions indicating that" such recovery could not be had, citing *Land-Title & Trust Co.* v. *North-Western Nat. Bank,* 196 Pa. 230 [46 A. 420, 79 Am.St.Rep. 717, 50 L.R.A. 75]; *General Fire Assur. Co.* v. *State Bank,* 177 App.Div. 745 [164 N.Y.S. 871]; *Fidelity & Guaranty Fire Corp.* v. *Marine M. Trust Co.,* 162 Misc. 12 [293 N.Y.S. 519]. While the payees in the cited cases were existing rather than non-existing persons, with the checks drawn to their order upon the mistaken belief, by reason of the fraud practiced upon the drawer, that the actual payments represented by the checks were in fact due to the named payees, the precise character of the payees was not deemed significant. So the "Land-Title case" is quoted (46 A. 422) as follows, at page 533: "Between the bank and the trust company, as the drawer of the check, no relation, contractual or otherwise, existed. The drawer of a check cannot maintain an action against one who collects it on a forged endorsement from the bank on which it was drawn although the bank paying the check may. The remedy of the drawer is against the bank which pays his check, and the bank's remedy is against the person to whom it paid. The liability of the party collecting the check arises from his implied warranty of the endorsement. This liability is founded on contract, and not on negligence, and it exists, if at all, whether there was negligence or not."

Specifically, it was held in the Metropolitan Life Ins. Co. case: (1) That "no *contractual* obligation arises in favor of the drawer upon the guarantee of the collecting bank of the validity of the forged endorsement of the signature of the *fictitious* payee" (p. 533, emphasis added); (2) that "the checks were not payable to anyone . . . were not negotiable instruments . . . were not . . . of any value to anyone" and so could not be the subject of an "action for *conversion*" (p. 534, emphasis added); and (3) there could be no action for *conversion* of "*plaintiff's money*" because "the relationship" between the bank and plaintiff was "that of debtor and creditor" and "title" to the funds "deposited by plaintiff . . . passed immediately to [the] bank," which "paid out its own money [on the checks] and not that of plaintiff" (p. 534, emphasis added).

Plaintiff here argues that the rationale of the Metropolitan Life Ins. Co. case does not extend to the present situation where the checks were made payable to actual persons with whom plaintiff had business dealings rather than to "fictitious and non-existing" persons. But such factual difference does not appear to be a valid distinction with respect to checks allegedly made payable to "fictitious persons not known to plaintiff to be fictitious persons and having no interest whatsoever in or to any part of the proceeds of said checks." Such language comprehends in its essential aspects the present situation involving the absence of any right in the named payee to the proceeds of the check; and whether such payee be an existing or a nonexisting person, there should be no difference in the applicable law as to the liability between the parties in this action. In either event, insofar as the drawer's true obligation to the payee was concerned, he had no existence as an actual payee to whom money was due, and except for the fraud practiced upon the drawer, it was not intended that such payee should have an interest in the check. As so analyzed the Metropolitan case is strikingly similar on its determinative facts to those here involved. There, as here, the checks were made payable to *fictitious creditors,* with the signing officer unaware of the fiction and intending the checks to be payable to real persons "having [an] interest . . . in . . . the proceeds of said checks"; there, as here, the dishonest employee did not intend the named payees to receive the checks and no delivery was made of them; there, as here, the collecting bank cashed the checks on forged endorsements and then received payment thereon from the drawee bank upon presentation with its guarantee of all prior endorsements; and there, as here, the statute of limitations had run in bar of plaintiff's maintenance of an action against the drawee bank for the recovery of its loss.

Plaintiff argues that an action such as this has been sustained in various jurisdictions (7 Am.Jur. § 594, p. 431; 9 C.J.S. § 356, p. 738) though on different theories—as for money had and received by the collecting bank for the use and benefit of the drawer, by virtue of an implied contract (e. g. *Railroad Building, Loan & Savings Ass'n.* v. *Bankers Mortgage Co.,* 142 Kan. 564 [51 P.2d 61, 102 A.L.R. 140]; *United States F. & G. Co.* v. *First National Bank of El Paso,* (Tex.Civ.App.) 93 S.W.2d 562; *Washington Mechanics' Sav. Bank* v. *District Title Ins. Co.,* 65 F.2d 827 [62 App.D.C.

194]); for conversion of the check and its proceeds from the rightful owner, the drawer (*e. g., Home Indemnity Co. of N. Y.* v. *State Bank of Fort Dodge,* 233 Iowa 103 [8 N.W.2d 757]; *Sidles Co.* v. *Pioneer Valley Savings Bank,* 233 Iowa 1057 [8 N.W.2d 794]; *Gustin-Bacon Mfg. Co.* v. *First National Bank,* 306 Ill. 179 [137 N.E. 793]); or for avoidance of a multiplicity of actions in settling a three-cornered controversy, in that as between the drawer, the collecting bank and the drawee, the collecting bank must ultimately bear the loss, so the drawer should be allowed to proceed directly against it (see 36 Harv.L.Rev. 879). With respect to this latter premise of direct action, it, of course, does not prevail here in that plaintiff's right of action against the drawee bank is concededly barred by the one-year period of the statute of limitations (Code Civ. Proc., § 340, subd. 3), as was likewise the fact in the Metropolitan case as above mentioned.

While it is true that there is a "hopeless conflict" in the authorities on the subject, as noted in the Metropolitan case, nevertheless the reasoning of the latter decision, in holding that the drawer had no right of direct action against the collecting bank for its loss on checks bearing forged endorsements, appears to represent the sounder view, and we conclude that such reasoning is likewise applicable here. (See Zollman, Banks and Banking, Perm. ed., § 4263; § 4264, note, 1945 Cumulative Pocket Part.)

In the case of the check made payable to "Benicia Arsenal" and then altered to read "S. Oster, c/o Benicia Arsenal," a different situation is presented. Such check was actually endorsed by S. Oster, the person appearing by the alteration to be the named payee, and deposited with defendant; and the latter in turn presented it for payment to the drawee bank. Plaintiff's bank account was then debited for the amount of the check. Defendant's guarantee of all prior endorsements corresponded with the true facts in that the endorsement in question was actually written by the person appearing as the named payee. While the negotiation of the check was wrongful, plaintiff has no cause of action against defendant for its loss as the result of the perfidy of its own employee. Insofar as the essential considerations between plaintiff and defendant are concerned, this check likewise represented a payment to a *fictitious creditor* and as such, one "having no interest whatsoever in or to any part of the proceeds" within the principles discussed in the case of *Metro-*

*politan Life Ins. Co.* v. *San Francisco Bank, supra,* 58 Cal. App.2d 528.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—I concur in the judgment and, generally, in the reasoning upon which it is based. I would prefer however to frankly recognize that *Security-First Nat. Bk.* v. *Bank of America* (1943), 22 Cal.2d 154 [137 P.2d 452], was erroneously decided, and to overrule it, for the reasons stated in the dissenting opinion of Mr. Justice Shenk. (Id., pp. 161 et seq.)