[L. A. No. 23400.   In Bank.   Aug. 12, 1955.]

PACIFIC COAST CHEESE, INC. (a Corporation), Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a Banking Corporation), Respondent.

Jesse A. Hamilton for Appellant.

Iverson & Hogoboom and Paul E. Iverson for Respondent.

GIBSON, C. J.—Certain checks drawn against plaintiff's commercial account were altered so as to raise the amounts for which they had been written. Defendant bank honored the checks as altered, and the raised amounts were deducted from plaintiff's account. Subsequently the bank dishonored other checks of plaintiff on the ground that insufficient funds remained in the account after the deductions had been made. This action was brought to recover the amounts which plaintiff asserted had been wrongfully deducted from its account by reason of the bank's payment of the raised checks. Plaintiff also sought damages for asserted injury to credit resulting from the dishonoring of checks for lack of funds. The trial court directed a verdict for defendant, and plaintiff has appealed.

From January 25, 1952, through the month of February, plaintiff's bookkeeper drafted a series of checks for salaries and advances on salaries, filling in either by handwriting or by typewriter the date, the name of the payee, and the amount in figures, but leaving blank the space for the written amount. Plaintiff's manager signed the checks while they were in this condition and returned them to the bookkeeper, who put them through a protectograph machine, which is a device for perforating the amount in words on a check. The manager did not see what amounts were entered by use of the machine. There is evidence from which it may be inferred that, except in one instance, the bookkeeper inserted the number "1" in front of the figures which were on the checks when they were signed and that he perforated corresponding sums on the checks when he put them through the protectograph, in effect raising each check by $100. It also may be inferred that he raised one check for $52.05 by altering the first "5" to an "8" and writing in the larger sum with the protectograph.

The first altered check was charged to plaintiff's account on January 25 and was indicated by an entry of $130 on the January bank statement. Shortly after the statement arrived in the mail, the manager found it on his desk, placed it in his drawer and, upon examining it several days later, noticed that there was no canceled check or voucher for the $130 deduction. He did not mention the missing item to anyone since he expected that it would arrive in the following month's statement, and he soon forgot about it.

On March 5, 1952, John Bell, an employee who occasionally made deposits for plaintiff, called at the bank and obtained

the February statement, although the bank had not been authorized to deliver statements to him. Plaintiff's manager first suspected something was wrong when, on March 8, he learned that a check which was not one of the altered series had been dishonored for lack of sufficient funds. He discovered that plaintiff's account had been charged by the bank with amounts which did not correspond with plaintiff's records, and, although he made a search, he could not find the canceled checks representing the charges made by the bank. The altered checks were delivered to Bell with the February statement, and he gave them to the bookkeeper. The checks were not introduced in evidence, and the only showing as to what happened to them is the testimony of plaintiff's manager that two of the checks were probably in the district attorney's office. The manager said that he did not have any of them, and it does not appear that anyone connected with plaintiff other than the bookkeeper ever saw them. The bank served on plaintiff a notice to produce all checks, but there is no evidence that the bank made any other effort to locate them.

The manager filed a criminal complaint against the bookkeeper and, as plaintiff's assignee, instituted a civil action, obtaining judgment against the bookkeeper for an amount which included the same items that plaintiff now asserts were improperly deducted from its account by the bank. The judgment has not been satisfied.

■ The general rule is that a bank may not charge its depositor's account with payments made on altered or forged checks unless some conduct of the depositor falling under the principles of negligence or estoppel contributed to the loss *and* the bank was itself free from negligence. (*Basch* v. *Bank of America*, 22 Cal.2d 316, 321 [139 P.2d 1] ; *Union Tool Co.* v. *Farmers etc. Nat. Bank*, 192 Cal. 40, 46-48 [218 P. 424, 28 A.L.R. 1417] ; *Glassell Dev. Co.* v. *Citizens' Nat. Bank*, 191 Cal. 375, 379 [216 P. 1012, 28 A.L.R. 1427] ; *cf. Los Angeles Inv. Co.* v. *Home Sav. Bank*, 180 Cal. 601, 604 [182 P. 293, 5 A.L.R. 1193].) ■ This rule has been applied where, as here, the alteration or forgery was committed by an employee of the depositor. (*Basch* v. *Bank of America*, 22 Cal. 2d 316, 320, 321 [139 P.2d 1] ; *Union Tool Co.* v. *Farmers etc. Nat. Bank*, 192 Cal. 40, 44, 46-48 [218 P. 424, 28 A.L.R. 1417].)

■ When it appears that a bank has made payment on the basis of an altered or forged check, the burden is on the bank to justify the charge by establishing, as an affirmative de-

fense, both that it was free from negligence and that the depositor was negligent or was estopped to deny the correctness of the payments. (*Basch* v. *Bank of America*, 22 Cal. 2d 316, 321, 333 [139 P.2d 1] [forged signature]; *Sommer* v. *Bank of Italy*, 109 Cal.App. 370, 376 [293 P. 98] [forged signature].) ▮ Ordinarily the questions presented by this defense are to be determined by the jury. (*Basch* v. *Bank of America*, 22 Cal.2d 316, 323, 331 [139 P.2d 1]; *Frankini* v. *Bank of America*, 31 Cal.App.2d 666, 674 [88 P.2d 790].)

We shall first consider whether defendant bank has met its burden of showing that it was free from negligence. ▮ In considering this question we must keep in mind the rule that a directed verdict may not be sustained on the basis of an affirmative defense unless it appears from the record that the defense was established as a matter of law. ▮ The only evidence offered by the bank to show that it exercised due care was the testimony of its manager that all checks over $100 are customarily examined by two or three employees, including a senior teller who passes on them as to date, correctness of amount, signature, endorsement and possible discrepancies. Any irregularity is called to the attention of the bank manager, and according to his testimony, he was not informed of any irregularity during February or March 1952 concerning the checks involved here. He admitted that the bank occasionally does make errors.

There is no testimony which, as a matter of law, eliminates the obvious possibility that an alteration may have been apparent on the face of one or more of the checks and that for this reason the bank may have been negligent in honoring them. For example, there may have been a suspicious crowding of the number "1" in front of the other figures on some of the checks or a difference in ink. Similarly, an erasure or other irregularity may have been visible on the check which was altered from $52.05 to $82.05, particularly if the check was one of those which had been typewritten. ▮ While it is true that a lack of anything suspicious on the face of the altered checks would have been strong evidence that the bank was not negligent, the checks were not introduced in evidence, and defendant did not avail itself of this means of sustaining its burden of showing due care. (Compare *Otis Elevator Co.* v. *First Nat. Bank*, 163 Cal. 31, 35, 40, 41 [124 P. 704, 41 L.R.A.N.S. 529], where nothing suspicious appeared on the face of the checks.) As we have seen, the record does not show that the bank did anything to locate the altered checks

other than to serve on plaintiff a notice to produce them, even though there was testimony indicating that two checks were in the possession of the district attorney. ■ The possibility that the bookkeeper may have destroyed some or all of the checks does not render inapplicable the rule that the bank, having made payments on the basis of altered checks, is responsible unless it can affirmatively show that the loss was not caused by its negligence. (*Cf. Basch* v. *Bank of America*, 22 Cal.2d 316, 331-334 [139 P.2d 1] ; *Sommer* v. *Bank of Italy*, 109 Cal.App. 370, 373, 375-376 [293 P. 98].)

■ The evidence offered by the bank would support a finding that it was not negligent, but there is nothing in the record which compels such a conclusion or warrants a directed verdict on this ground.

■ The directed verdict cannot be justified, as contended by defendant, on the theory that plaintiff is barred under the doctrine of election of remedies by reason of the recovery of judgment against the bookkeeper for damages resulting from alteration of the checks. ■ The doctrine is based on estoppel and, when applicable, operates only if the party asserting it has been injured. (See *Steiner* v. *Rowley*, 35 Cal.2d 713, 720 [221 P.2d 9] ; *Commercial Centre Realty Co.* v. *Superior Court*, 7 Cal.2d 121, 129 [59 P.2d 978, 107 A.L.R. 714] ; *Campanella* v. *Campanella*, 204 Cal. 515, 521 [269 P.2d 433] ; *Mansfield* v. *Pickwick Stages, Northern Div., Inc.*, 191 Cal. 129, 131 [215 P. 389] ; *Hines* v. *Ward*, 121 Cal. 115, 120-121 [53 P. 427] ; *Perkins* v. *Benguet Consol. Min. Co.*, 55 Cal.App.2d 720, 758 [132 P.2d 70].) ■ Here the evidence does not show as a matter of law that defendant was in any way injured or prejudiced by plaintiff's action against the bookkeeper.

The judgment must be reversed for the reasons discussed above, and it is unnecessary to consider other claims of error asserted by plaintiff.

The judgment is reversed.

Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Edmonds J., concurred in the judgment.