No. 32,316

The Railroad Building, Loan and Savings Association (*Plaintiff*)
v. The Bankers Mortgage Company and F. L. Campbell, Re-
ceiver, *Appellants*, The Merchants National Bank of Topeka
and The State Bank of Ottawa et al., *Appellees*.

(51 P. 2d 61)

Opinion filed
November 9, 1935.

*John D. M. Hamilton, Otis Allen, T. M. Lillard, O. B. Eidson* and *Philip H. Lewis*, all of Topeka, for the appellants.

*H. W. Hart,* of Wichita, and *C. O. Conkey,* of Newton, for the Railroad Building, Loan and Savings Association; *W. S. Jenks,* of Ottawa, for appellee State Bank of Ottawa.

The opinion of the court was delivered by

Thiele, J.: The question raised by these appeals is the liability of an intermediate indorser to the maker of a check which had been negotiated by the wrongful and unlawful indorsement of the name of one of two joint payees. Two appeals are before us, but as the facts are substantially identical so far as the question raised is concerned, only one case will be noticed.

For convenience, the appellant, the Bankers Mortgage Company, will be usually referred to as the mortgage company; the appellee,

the State Bank of Ottawa, as the Ottawa bank; the Merchants National Bank of Topeka, as the Topeka bank, and the Railroad Building, Loan and Savings Association as the association.

Clarence F. Grayum and his wife owned town lots in Ottawa. On May 29, 1924, they borrowed from the association the sum of $1,250, giving a mortgage on the lots as security. Sometime prior to 1927 they conveyed the lots to F. A. Clark, of Ottawa, who in 1927 made application to the mortgage company for a loan of $1,750 on the property. Clark was an abstracter of titles, and when he applied for the loan he furnished an abstract showing the above mortgage as unreleased. The application was approved, the note and mortgage were made and the mortgage company sent to its agent, Hankey, a check dated October 6, 1927, for the net amount due on the loan, *i. e.*, $1,614.81, payable to the order of "F. A. Clark and Railroad Building & Loan Association" with instructions:

"You are authorized to permit this check to be cashed when you have secured the release of the Railroad Building and Loan mortgage, had same recorded and shown on the abstract."

Clark furnished Hankey an abstract showing the association's mortgage released, and the check was delivered to him. Clark had been a local collector at Ottawa for the association, authorized to receive installment payments, and had an account in the Ottawa bank in the name of the Railroad Building, Loan and Savings Association, F. A. Clark, agent, although it was not shown the association knew of it. However, Clark took the $1,614.81 check, indorsed his own name and, using a rubber stamp, also indorsed it—

"Railroad Building Loan
and Savings Association,
F. A. Clark, Agt., Ottawa, Kan.,"

And deposited the same to an account which he carried in the name of Ottawa Realty Co. The Ottawa bank, following usual practice, stamped the check as follows:

"Pay to the order of
Any Bank, Banker or Trust Co.,
All prior indorsements guaranteed
Oct. 7, 1927
State Bank of Ottawa
83-93 Ottawa, Kansas, 83-93
H. L. Jewell, Cashier."

And sent it forward through usual banking channels, and on October 10, 1927, it reached the Topeka bank, on which it was drawn, and was paid. The last bank rendered the mortgage company a statement of its account for October, 1927, on or about November 1, 1927, and returned the canceled check therewith. It later developed, with reference to the loans involved in both actions—and Clark's procedure in each was the same—that Clark had delivered abstracts of title showing releases of the mortgages to the association, when in fact no such releases existed; that he had kept up the installment payments to the association on its loans, and had paid interest to the mortgage company on its loans, until he absconded sometime prior to July 1, 1931. The actual facts were then at least partially discovered, and on July 29, 1931, the association filed its actions to foreclose its mortgages, the mortgage company, the Ottawa bank and the Topeka bank being parties defendant in both actions, along with other necessary or proper parties. We are not concerned here with those phases of the litigation resulting in a judgment in favor of the association as to priority of its liens, and finding generally in favor of the Topeka bank. By its cross petition filed September 16, 1931, the mortgage company sought to recover against the Ottawa bank by reason of its indorsement on the checks as heretofore shown. Ultimately, the trial court found in favor of that bank. The mortgage company appeals. Although the notice of appeal is broad enough to cover other adjudications, the appellant now agrees the judgment of the trial court was proper except as to the following proposition: That the trial court erred in not rendering judgment in favor of the mortgage company and against the Ottawa bank.

Although we have given an extended statement to show the situation out of which the controversy arose, the proposition now before us is this: On September 16, 1931, was the Ottawa bank liable to the drawer of a check on the Topeka bank where on October 7, 1927, in good faith, it accepted the check, wrongfully and unlawfully indorsed as to one of two joint payees, for deposit to the credit of the wrongdoer, and thereafter sent the check forward for collection through banking channels bearing its indorsement including the words "All Prior Indorsements Guaranteed," which check was on October 10, 1927, paid by the Topeka bank, charged to the account of the drawer, and about November 1, 1927, returned to the drawer with a statement of its account?

Appellant urges that it is entitled to recover on account of the

written indorsement and guaranty of prior indorsements of the Ottawa bank from that bank. The right of the drawer of a check to recover under the circumstances does not seem to have been considered heretofore by this court.

It may be observed that under the negotiable instruments act (R. S. 52-223) where a signature is made without authority of the person whose signature it purports to be, it is inoperative and no right to enforce payment thereunder can be acquired through such signature.

In *Farmers' State Bank in Merkel v. United States,* 62 F. 2d 178, checks were caused to be issued by a disbursing officer of the United States army on a fraudulent pay roll, the name of the payee was forged thereon and the checks cashed by the appellant bank and sent through banking channels and ultimately paid by the Treasurer of the United States. Upon discovery—and how long a period intervened is not stated—the United States brought suit to collect. It recovered in the lower court and the bank appealed. The first paragraph of the syllabus by the court reads as follows:

"Maker of checks paid by bank on forged indorsements of payee and indorsed by such bank for collection was entitled to recover money received on checks by bank because the bank, by its indorsement for collection, warranted the genuineness of the forged indorsements of the payee."

In *Labor Bank & Trust Co. v. Adams et al.,* 23 S. W. 2d 814 (Tex. Civ. App.), where the name of the payee of a check was forged and the check cashed by the forger, the drawer not learning thereof until the check had been paid by the drawee bank, in an action by the drawer it was held that:

"The overwhelming weight of authority is that, where a collecting bank pays money on a forged indorsement and the check is thereafter forwarded to the bank against which same is drawn and same is paid, that the collecting bank holds said funds for and on behalf of the owner of the check, and that its payment of the funds to the party who committed the forgery, or to any other person, does not discharge its obligation, and that the owner of the check has a right to bring a suit direct against the collecting bank that has collected the funds on the forged indorsement, whether it has paid same out or not, and recover the amount thereof. (Brannon's Negotiable Instruments Law, 4th ed., p. 193; *Merchants' Bank v. National Capitol Press,* 53 App. D. C. 59, 288 Fed. 265, 31 A. L. R. 1066; *United States Portland Cement Co. v. United States National Bank,* 61 Colo. 334, 157 Pac. 202, L. R. A. 1917A 145; *Strong v. Missouri-Lincoln Trust Co.* [Mo. App.] 263 S. W. 1038; *Good Roads Machinery Co. v. Broadway Bank,* [Mo. App.] 267 S. W. 41; *Hope Vacuum Cleaner Co. v. Commercial Nat. Bank,* 101 Kan. 726, 168 Pac. 870.)" (p. 815.)

In *State v. Merchants Nat. Bank of St. Paul*, 145 Minn. 322, 177 N. W. 135, it was held:

"When a bank, which has cashed a negotiable voucher, transmits it with its own indorsement to another, it guarantees that all previous indorsements are genuine and that it has good title to the paper, and, if the prior indorsement of the payee was forged, the bank must respond to one who later purchases or pays the instrument." (Syl. ¶ 1.)

In 5 R. C. L. 569 it is said:

"The remedy of the drawer is against the bank paying his check, and the bank's remedy is against the person to whom it paid. The liability ·of the party collecting the check arises from his implied warranty of the indorsement, and is founded on contract, and not on negligence." (§ 93.)

See, also, annotations in 31 A. L. R. 1068 and 67 A. L. R. 1535. And phases of the question are discussed in 3 R. C. L. 542, 1148; 5 Michie on Banks & Banking, p. 518, ch. 9, § 278; 6 Michie on Banks & Banking,, p. 127, ch. 10, § 80; Morse on Banks and Banking (6th ed.) p. 1060, § 474; Brady on Bank Checks (2d ed.) p. 264, § 168. Also, see *United Workmen v. Bank*, 92 Kan. 876, 142 Pac. 974, where suit was brought against the drawee bank and not against the bank paying the check in the first instance.

Although we conclude that the drawer of a check, which is indorsed without the authority of the person whose signature it purports to be, and thereafter paid or cashed or received for value by an intermediate bank which indorses it and sends it forward for collection to the drawee bank where it is paid, may, in an appropriate action, recover from the first bank, that is not decisive of the instant case.

Under the negotiable instruments act, the liabilities of the parties are clearly defined. Although the indorsement contained the words "All Prior Indorsements Guaranteed," to a considerable extent they added nothing to the warranties the Ottawa bank incurred under the statute in indorsing the check (R. S. 52-606, 52-607). And it would have had the same liability if it had transferred the check by delivery, for, as was said in *Rucker v. Hagar et al.*, 117 Kan. 76, 79, 230 Pac. 70:

"The warranty of one who transfers a negotiable instrument by delivery is as much a contract that enumerated facts in relation to the paper are as promised, as if the warranty were written upon the instrument and were signed by the warrantor." (p. 79.)

And it was held that an action to enforce liability for the statutory warranties was upon contract. The contract must therefore

find its basis in the statute, and it is clear from a reading of it that the indorser warrants only to all subsequent holders in due course.

While it is difficult in many cases to say who is or is not a holder in due course (see 8 C. J. 464 and Brannan's Negotiable Instruments Law, 5th ed., p. 486, § 52), we are cited to no authority, nor do we find any, holding the drawer of a check to be such. And the statutory definition (R. S. 52-502) would seem by its terms to exclude him. In our opinion, the drawer is not a holder in due course, and not being such holder, the contract of the Ottawa bank, evidenced by its indorsement, was not for his benefit but solely for the benefit of subsequent holders in due course.

What is the nature of the action then on which the drawer may recover from the bank?

In 6 Michie on Banks and Banking, p. 130, § 85, is the following:

"Where a bank cashes checks on forged indorsements and collects the amounts of the checks from the drawee banks, the payee can bring an action of trover against the bank for unlawful conversion."

In 2 Morse on Banks and Banking (6th ed.) p. 1060, § 474, it is stated:

"If A draws a check payable to B and delivers it to B, and C forges B's name and gets the money, B can recover from the bank on the money counts if the amount has been charged to the drawer. That constitutes an acceptance of the check, and the bank holds the money for the true owner; if it pays to a wrongful holder, or any one not entitled to receive, it must repay."

In *United States v. Bank*, 2 Mackey 289, a paymaster of the United States issued his check in payment of a claim. The name of the payee was forged to the check, and it was negotiated and later reached the drawee bank. An action was brought against the drawee bank. While other questions were involved, there was also controversy as to the nature of the action. It was said:

"Prior indorsers are only liable upon a note, bill or check to a holder when it is dishonored. When the note or bill is paid, the maker or acceptor who has paid it by mistake, *i. e.*, to a wrong person, or on a forged indorsement, has no right of action *on the paper itself* against any party to it. His right is to sue in assumpsit for money had and received, to recover his money, as paid under mistake of fact." (p. 298.)

In *Farmers' State Bank in Merkel v. United States*, supra, appears the following:

"The money, having been paid on the faith of the bank's warranties, by its indorsements, of the genuineness of the forged indorsements of the name of the payee, *was received by the bank for the use of the appellee.*" (Italics ours.) (p. 179.)

And similar language may be found in the quotation from *Labor Bank & Trust Co. v. Adams et al.,* supra.

See, also, *Blum v. Whipple,* 194 Mass. 253, 80 N. E. 501, 13 L. R. A., n. s., 211, holding the payee may maintain trover against one who takes a check upon unauthorized indorsement, as well as the note in the last citation on the remedy of the payee. And in the annotations in 14 A. L. R. 764, 31 A. L. R. 1068, 67 A. L. R. 1535, and 69 A. L. R. 1076 may be found citation of cases holding variously that the remedy is for money had and received and for conversion. The theory upon which recovery has been allowed is upon the implied obligation to pay to the true owner the moneys received by the collecting bank and erroneously paid by it to the wrongdoer on the strength of the forged indorsement. Such an action, whether denominated in assumpsit for money had and received or in trover, is upon the implied contract growing out of the circumstances. In the case before us the action was not filed within three years and was barred by R. S. 60-306, *second.* (See *Kansas City Title & Trust Co. v. Fourth Nat'l Bank,* 135 Kan. 414, 10 P. 2d 896, 87 A. L. R. 334.)

It follows the judgment of the trial court was correct and it is affirmed.