FARMERS UNION AGR. CR. CORP., Appellant, v. NORTH-
WEST SECURITY NATIONAL BANK, Respondent

(281 N. W. 505.)

(File No. 8152.    Opinion filed October 7, 1938.)

*Louis H. Smith*, of Sioux Falls, for Appellant.

*Bielski, Elliott & McQuillen* and *Danforth & Davenport*, all of Sioux Falls, for Respondent.

.POLLEY, J. Defendant is a banking corporation doing business in Sioux Falls. Plaintiff is engaged in making and negotiating livestock loans. On or about the 15th day of November, 1936, Chas. Bollinger made application to plaintiff for a loan of $7300 and offered as security for such loan a chattel mortgage on 200 head of steers that Bollinger pretended to be buying from one H. Arneson.

At the time of the application plaintiff had on deposit in defendant's bank a sum of money equal to the amount applied for. The application was approved and plaintiff drew a check against

the defendant bank for $7300 payable to Bollinger and Arneson jointly and mailed it to Arneson at Howard. The letter containing the check was placed in Arneson's mail box by the mail carrier. Bollinger took the letter from the mail box and removed the check. On the following day Bollinger and one J. O. Lee presented the check for payment to a bank at Wentworth. At the time of such presentation the check bore the names of H. Arneson, Chas. Bollinger and J. O. Lee, as endorsers. The cashier of the bank, without making any inquiry as to the genuineness of the names of the endorsers, paid the check. Of the proceeds of the check $5700 was placed to the credit of Lee to pay for a band of sheep Bollinger was buying from Lee. The balance of $1600 was paid to Bollinger.

On the 27th day of November the check reached the defendant bank where, again without inquiry as to the genuineness of the endorsers, it was cashed and the full amount of the check was charged against plaintiff's checking account.

On the 14th day of January, 1937 Bollinger informed plaintiff that he had procured the said loan by fraud; that he had not purchased the 200 head of steers from Arneson and that there were no such steers in existence. This meant, of course, that there was no security for the $7300 loan. At that time Bollinger gave to plaintiff a bill of sale of which the following is a copy:

"For and in consideration of the sum of $1.00, receipt whereof is hereby acknowledged by second party, the said second party does hereby sell, bargain and convey to Farmers Union Agricultural Credit Corporation of Sioux Falls, South Dakota, the following described personal property, to wit: About 1400 breeding ewes, 2, 3, 4 and 5 years old, all now located on Lynch farm one mile south and two miles east of Ramona, Lake county, South Dakota, 14 older cattle and 2 calves in possession of Willis Powell, ten miles north of Montrose, South Dakota, and 3 horses at Highmore, South Dakota, in possession of George Peske, and 3 horses at Highmore, South Dakota, and 2 cattle and 2 horses with sheep.

"To have and to hold forever as its absolute property, said sheep subject to a mortgage of $2600.00. This is no release or satisfaction.

"Dated January 14, 1937.

"Chas. Bollinger."

The sheep described in the bill of sale were the sheep that Bollinger bought from Lee and for which Bollinger paid Lee $5700 of the money he borrowed from plaintiff.

On the 24th day of February, 1937, Mr. Carlson, an officer of plaintiff's company, and a witness at the trial, had an interview with Mr. Arneson in which Arneson informed Carlson that he knew nothing about the transaction between Bollinger and the plaintiff; that he had never seen or endorsed the $7300 check and that his name on the back thereof was a forgery. This was reported to plaintiff's attorney, who, after giving the matter consideration decided, and so advised plaintiff, that because of the forged endorsement on the check defendant was liable to plaintiff for the amount of money paid on the check. Plaintiff gave defendant immediate notice of the forgery and demanded a return of the money paid on the check. The demand was refused and plaintiff commenced this action for the recovery of the said money. That a bank is liable to a depositor for money paid from his deposit on a forged check is too well settled to merit discussion. Los Angeles I. Co. v. Home Savings Bank, 180 Cal. 601, 182 P. 293, 5 A. L. R. 1193; Railroad B. L. & S. Assn. v. Bankers M. Co., 142 Kan. 564, 51 P. 2d 61, 102 A. L. R. 140, and cases cited. This proposition is not disputed by either party.

The case was tried to a jury. At the close of plaintiff's testimony, and again at the close of all the testimony, defendant moved for a directed verdict. Plaintiff then moved for a directed verdict which motion was granted. Defendant then moved for judgment not withstanding the verdict; this motion was denied and judgment was entered on the verdict. Defendant then moved for a new trial which motion was granted and, from the order granting a new trial plaintiff appeals.

The first ground upon which the new trial was granted is alleged newly discovered evidence that if introduced at the trial would, defendant claims, prove that Bollinger had authority from Arneson to endorse the $7300 check. The evidence to prove this fact consists of alleged intimate business relations between Bollinger and Arneson of long standing, but nothing is shown relating to the check in question, or authority to endorse the same or any other check or instrument of any kind, or that would be competent to prove such authority. Authority to en-

dorse a check by an agent must be in writing, and so far as this record is concerned the only competent evidence of such authority is the written authority itself. Section 1723, R. C. 1919; State Bank of Alcester v. Weeks, 45 S. D. 639, 189 N. W. 941, and on rehearing 46 S. D. 93, 190 N. W. 806. There is no claim that any such authority was ever given.

It is next shown by defendant's affidavits of alleged newly discovered evidence that plaintiff learned of the fraud perpetrated by Bollinger in securing the $7300 loan as early as January 14, 1937, but that notice of such fact was not given to defendant for a period of six weeks after plaintiff knew of Bollinger's fraud, during which time Bollinger's financial condition changed for the worse until he became completely insolvent. This argument is without application to the facts as they were known at that time. It is true that plaintiff learned on the 14th day of January, 1937, that the 200 head of steers did not exist and that plaintiff had no security for the loan but this fact in the absence of knowledge of the forgery imposed no liability upon the defendant and there was no occasion for notifying defendant of the forgery. In the absence of knowledge of the forgery, plaintiff, as an endorsee of the note, had no recourse except as against Bollinger. , Plaintiff made an effort to collect from him and did secure the bill of sale above set out of some 1400 head of sheep and a few head of other live stock. This sale was subject to a chattel mortgage for $2600 and the amount realized by plaintiff after payment of this incumbrance was only trifling. But when on the 24th day of February, 1937, plaintiff learned that Arneson's name on the check was a forgery the situation was changed. Plaintiff immediately notified defendant of the forgery and demanded payment of the amount defendant had paid on the check. Defendant denied liability on the ground that plaintiff had collected from Bollinger and that this amounted to an election of remedies and that defendant was thereby released. This ground is not tenable because: first, the bill of sale was not accepted as a satisfaction of plaintiff's claim; and second, that at the time plaintiff took the bill of sale it had not learned of the forgery or the liability of defendant upon the forged endorsement.

Defendant claims that it did not know of the bill of sale or the disposition that had been made of the sheep at the time

of the trial; that had it had such knowledge, or could by reasonable diligence have procured such knowledge prior to the trial it could have shown that with proper care and feeding plaintiff could have realized sufficient to pay all or a considerable part of plaintiff's claim. How material to defendant's case this evidence might have been it is not necessary to inquire, because if defendant could have obtained this information by making diligent inquiry before trial such evidence is not ground for a new trial. But no diligence whatever was shown. Defendant's counsel said he had heard of the bill of sale some time before the trial. The fact alone was sufficient to put him on inquiry and had even casual inquiry been made at that time he would have found out all about the bill of sale. Or had defendant's counsel gone into the matter on cross-examination at the trial the entire transaction would have been disclosed. Mr. Carlson who secured the bill of sale from Bollinger was a witness at the trial. But no such question was asked and a new trial will not be granted for the purpose of giving counsel an opportunity to do what he should have done on the first trial.

Respondent predicates error on the court's refusal to submit the question of whether Arneson was not bound by his purported endorsement of the check to the jury. There was no error in refusing to submit this question to the jury. There is not a scintilla of evidence in the record proving or tending to prove that Arneson ever in any manner authorized anyone to endorse the check or that he knew of its existence until long after it had been endorsed and paid; and there is no claim that the endorsement was ever ratified by Arneson. We find no error in the record that would warrant a new trial.

The order appealed from is reversed.

ROBERTS, P. J., and WARREN AND SMITH, JJ., concur in reversal.

RUDOLPH, J., dissents.