160 So.2d 813 (1964)
GREGORY-SALISBURY METAL PRODUCTS, INC.
v.
WHITNEY NATIONAL BANK OF NEW ORLEANS et al.
No. 1257.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
Rehearing Denied March 2, 1964.
Wilkinson & Wilkinson, James Wilkinson, III, John B. Wilkinson, New Orleans, for plaintiff and appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, A. J. Waechter, Jr., Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., Peter G. Burke, New Orleans, for defendants and appellees.
Before McBRIDE, REGAN and CHASEZ, JJ.
*814 REGAN, Judge.
Plaintiff, Gregory-Salisbury Metal Products, Inc., instituted this suit against the defendant,[1] the National Bank of Commerce in New Orleans, endeavoring to recover $71,261.86, representing the total amount of 113 checks drawn by its president, and thereafter illegally altered by its bookkeeper, who deposited them in his own account with the aforementioned bank. Plaintiff asserted that the defendant then collected the void checks from the Whitney National Bank, the drawee, and in so doing wrongfully converted plaintiff's property to its own use.
The defendant pleaded the exceptions of no right or cause of action, predicated on the theory that the plaintiff incurred no loss until such time as the drawee bank debited its account after each altered check had been honored by the drawee; thus, no theft had actually occurred when the intermediary bank accepted the altered checks and paid out its own funds to satisfy the face amount of each instrument.
From a judgment maintaining the exceptions and dismissing plaintiff's suit against this defendant, the plaintiff has prosecuted this appeal.
We reiterate herein what we have said on many occasions, and that is: For the purpose of ruling upon the validity of the exceptions of no right or cause of action, the allegations of plaintiff's petition are presumed to be true. Therefore, we are relegated to a consideration of the pertinent facts contained therein which are as follows:
Between the period of December 17, 1956, and July 25, 1961, Cameron Earl Brigham was employed as plaintiff's bookkeeper. He did not possess the authority to sign its checks; however, it was his duty to prepare them for distribution to various creditors of the plaintiff. Therefore, he would present each check, containing the typewritten name of the payee, with the supporting invoice therefor, to Harbert S. Gregory, plaintiff's president, for his signature. When the check had been signed, plaintiff would then erase the name of the designated payee and substitute his own name, and deposit the altered check to his credit in the National Bank of Commerce in New Orleans. The defendant would accept the check, credit Brigham's account, and then collect the face amount thereof from the Whitney National Bank, the drawee, who, in turn, debited plaintiff's account. Several years elapsed before the bookkeeper's systematic method of embezzlement was discovered, which revealed that he had misappropriated and altered 113 checks amounting to the sum of $71,261.86, which had been handled by the defendant herein as the intermediary or collecting bank.
Brigham's theft was actually revealed when the drawee bank reported to the plaintiff an altered check which had been presented to it for payment.
The only question which this appeal has posed for our consideration is one of law, and that is whether the drawer of a materially altered check may institute suit directly against the intermediary or collecting bank to recover the proceeds that the drawee bank ultimately debited against the drawer's account.
In the State of Louisiana the litigants have conceded that the answer to the fore-going *815 question is res novo; however, it has been decided by the Courts of many other states, which, incidentally, have not reached a uniform result. The majority view permits the drawer, or the plaintiff herein, to proceed directly against the intermediary bank; however, the reasoning employed in reaching this result is also not uniform. Some jurisdictions permit recovery on the theory that the collecting bank converted the drawer's money when it negotiated the void instrument to the drawee bank and obtained the drawer's funds. Other states have permitted the direct action on the assumption that the collecting bank wrongfully disbursed money emanating from a void instrument.[2]
The minority view, denying the drawee the right to proceed directly against the collecting bank, is predicated either on the theory that the conversion does not occur until the account of the drawer has been debited by the drawee, or that the action is one in contract and no contractual relationship exists between the collecting bank and the drawer. In limiting the action to one in contract, the Court in effect holds the collecting bank only to its endorsement warranting the genuineness of all prior endorsements and concludes that the warranty does not inure to the benefit of the drawer, but only to subsequent holders.[3]
Plaintiff insists that the majority view is in conformity with Louisiana's law relating to the subject of contracts. He concedes that while there is no privity of contract between the plaintiff and defendant, nonetheless a quasi contractual relationship does in fact exist and points to the rationale of the following articles of the LSA-Civil Code in support thereof:
"Art. 2293. Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties."
"Art. 2294. All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, from quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another's business, and the payment of a thing not due."
"Art. 2301. He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
"Art. 2302. He who has paid through mistake, believing himself a debtor, may reclaim what he has paid."
Plaintiff insists that the defendant, in accepting the altered checks from its errant bookkeeper committed an act which created a quasi contractual relationship between the bank and the drawer, in conformity with the rationale of Art. 2294 and, therefore, by virtue of the provisions of Art. 2301, it devolves on the defendant to repay the funds that were wrongfully obtained.
*816 Plaintiff further contends that the collecting bank was not a holder in due course[4] because each check was not complete and regular on its face due to the erasure of the name of the original payee and the obvious substitution of the bookkeeper's name in lieu thereof.
We are of the opinion that it would serve no useful purpose for us to decide whether the collecting bank was a holder in due course, since we are in accord with the rationale of the minority rule which is to the effect that the drawer has not incurred a loss until the drawee bank has debited its account with the amount of the void check.
The foregoing rule is in conformity with the law of Louisiana since in this state there exists a contractual relationship between the drawer and the drawee, which is classified as a debtor-creditor relationship.[5] When the deposit is made by the drawer, the funds become the property of the drawee, and the drawee, in turn, becomes the debtor of the drawer of the amount so deposited.
When the drawer issues a check, even if it is subsequently misappropriated and altered, the collecting bank cashing the check pays its own funds to the improper payee. Again when the collecting bank is reimbursed by the drawee bank, it receives funds that belong to the drawee, not to the drawer. Until the account of the drawer is wrongfully debited by the drawee, the depositor has, in fact sustained no loss.[6]
Since we are of the opinion that the depositor only sustains a loss after his account is debited, it follows, as a natural corollary, that the quasi contractual relationship and the duties devolving therefrom, as argued by the plaintiff, are not apposite to the facts posed for our consideration.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
CHASEZ, J., dissents with written reasons.
CHASEZ, Judge (dissenting).
I believe that the majority opinion in this case is incorrect and, therefore, I respectfully dissent.
The plaintiff-appellant, Gregory-Salisbury Metal Products, Inc., instituted this action against the defendant and others to recover the sum of $71,261.86, representing the total amount of 113 checks, the proceeds of which were embezzled by its bookkeeper. After describing the checks in detail i. e., check number, amount and date, the plaintiff set forth the manner *817 in which the employee embezzled the funds in Article 12 of the petition, as follows:
"That the means by which the said defendant Brigham obtained the funds aforesaid was as follows:
"From time to time, after the said Harbert S. Gregory had signed a check drawn to the order of a supplier, defendant Brigham would detach said check from its supporting invoice or invoices, would erase the name of the payee therefrom, and would, with a typewriter, substitute his own name as payee; that thereafter he would deposit said altered check to his own credit in The National Bank of Commerce in New Orleans."
Plaintiff then averred in Articles 15, 16, 18, and 19, of the petition, as follows:
"That all checks of Petitioner (including the checks listed above) were supplied by Whitney National Bank of New Orleans with the name and address of Petitioner printed thereon and were of a common protective composition paper, colored and lined, so that erasure thereon and alteration thereof would cause the surface color to be removed and the surface lines to be interrupted and would make erasure or alteration obvious and apparent.
"That the erasure and alteration of each of the checks listed above was so apparent, or should have been apparent to defendant The National Bank of Commerce in New Orleans; that nevertheless defendant The National Bank of Commerce in New Orleans accepted for credit to the account of Cameron Earl Brigham, each of said checks, totaling $71,261.86 listed in paragraph 13, and in due course cleared each of said checks with Whitney National Bank of New Orleans, and received from Whitney National Bank for credit of National Bank of Commerce the amount of same.
"That defendant The National Bank of Commerce in New Orleans knew * * * that it was receiving among its deposits, and crediting to the account of Brigham stolen or misappropriated (funds) belonging to Gregory-Salisbury Metal Products, Inc., but at no time did said defendant advise Petitioner of its possession of Petitioner's property or return same or any part thereof to Petitioner.
"That accordingly defendant The National Bank of Commerce in New Orleans now is obligated to return to Petitioner the full amount of Petitioner's said stolen funds received by The National Bank of Commerce in New Orleans, to-wit: $71,261.86."
Exceptions of no right and no cause of action were filed by The National Bank of Commerce in New Orleans, defendant-appellee herein. These exceptions were maintained by the District Court and the suit of the defendant-appellant herein was dismissed.
It has been repeatedly held by the Supreme Court of Louisiana and by this Court that for the purposes of ruling upon the validity of exceptions or no right or cause of action all of the allegations of plaintiff's petition are presumed to be true.
It will be seen from the allegations quoted above that the alteration of the checks presented by Brigham to The National Bank of Commerce was quite obvious, but, nevertheless, said bank accepted and credited them to the account of Brigham. It will also be noted that The National Bank of Commerce in New Orleans knew that it was receiving among its deposits and crediting to the account of Brigham "stolen or misappropriated funds belonging to Gregory-Salisbury Metal Products, Inc." These well plead allegations (see Article 856, LSA-C.C.P.) are presumed to be true; and if they are *818 true after the test of trial on the merits, there should be judgment in favor of the plaintiff-appellant and against the defendant-appellee.
It appears to the author hereof that a cause and right of action exists in favor of the plaintiff-appellant, and the judgment of the Court maintaining and affirming the judgment of the District Court dismissing the action of the plaintiff-appellant is erroneous.
The res novo question of which line of authorities should be applied in this matter should be decided with all other questions after a trial on the merits.
Rehearing denied.
CHASEZ, J., is of the opinion that a rehearing should be granted.
NOTES
[1] Also cited as defendants were the Whitney National Bank of New Orleans, the American Surety Company, Fidelity & Deposit Company of Maryland, Cameron Earl Brigham, Christian P. Gerber, Jr., George H. Giraud, Jr., C. Weis & Company, Springfield Fire & Marine Insurance Company, William R. Hogan, Jr., and United States Fidelity & Guaranty Company. It is unnecessary to discuss the hypothesis upon which plaintiff seeks recovery from these defendants or the various defenses urged by them, since we are only concerned with the validity of the judgment maintaining the exceptions urged by the National Bank of Commerce in New Orleans.
[2] R. R. Bldg., Loan and Savings Assoc. v. Bankers Mortgage Co., 142 Kan. 564, 51 P.2d 61, 102 A.L.R. 140; Wash. Mechanics Savings Bank v. District Title Ins. Co., 62 App.D.C. 194, 65 F.2d 827; Gustin-Bacon Mfg. Co. v. First National Bank of Englewood, 224 Ill.App. 457, 306 Ill. 179, 137 N.E. 793; Home Indemnity Co. of N.Y. v. State Bank of Ft. Dodge, 233 Iowa 103, 8 N.W.2d 757; State v. Merchants Nat. Bank, 145 Minn. 322, 177 N.W. 135; National Surety Corp. v. City Bank and Trust, 248 Wis. 32, 20 N.W.2d 559.
[3] California Mill Supply Corp. v. Bank of America N. T. & S., 36 Cal.2d 334, 223 P.2d 849; Stone and Webster Engineering Corp. v. First National Bank of Greenfield, 345 Mass. 1, 184 N.E.2d 358; Lavanier v. Cosmopolitan Bank and Trust Co., 36 Ohio App. 285, 173 N.E. 216; Land Title and Trust Co. v. Northwestern National Bank, 196 Pa. 230, 46 A. 420, 50 L.R.A. 75.
[4] LSA-R.S. 7:52 provides in part:

"A holder in due course is a holder who has taken the instrument under the following conditions:
"(1) That it is complete and regular upon its face."
[5] Hibernia National Bank in New Orleans v. National Bank of Commerce, 204 La. 777, 16 So.2d 352; In re Louisiana Savings Bank & Safe Deposit Co., 40 La.Ann. 514, 4 So. 301; Allen v. Cochran, 160 La. 425, 107 So. 292, 50 A.L.R. 459.
[6] In Zollman, Banks & Banking, Vol. 6 Sec. 4263, p. 475, this view is expressed:

"Since the drawee's act in paying a check on a forged endorsement is a nullity, the drawer's right to his deposit remains unaffected, and he hence cannot recover against the bank through whose hands the check has passed.
"The payment by the drawee to the presenting bank is not money received for his use.
"Though the drawee bank may have a cause of action against such presenting bank the drawer has no cause of action against such presenting bank because he is not damaged by the payment by the drawee. His right of action, if any, is against the drawee."