389 P.2d 742

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, a corporation, Plaintiff and Appellant,**

v.

**FIRST SECURITY BANK OF UTAH, NATIONAL ASSOCIATION, a corporation, Defendant and Respondent.**

No. 9891.

Supreme Court of Utah.

March 6, 1964.

**194**

Hanson & Baldwin, H. Wayne Wadsworth, Salt Lake City, for plaintiff and appellant.

Ray, Quinney & Nebeker, Don B. Allen, Salt Lake City, for defendant and respondent.

CALLISTER, Justice.

Plaintiff insurance company brought this suit against defendant bank for the amount of a draft which had been accepted by the latter and which bore a forged endorsement of one of the payees. From an adverse judgment, plaintiff brings this appeal.

The material facts are not in dispute. It appears that one Alburn Holder, doing business as "200" Motors, was the owner of a certain 1957 Chevrolet automobile, which was financed by City Finance Company. The automobile was insured by plaintiff under collision policy which designated Holder as the insured and City Finance as the "loss payee." The automobile was damaged in a collision and taken to Keith Walton Body Shop for repair. On March 30, 1959, plaintiff issued its draft in the amount of $624.96 to cover the cost of the repairs. The draft, which was drawn upon Wells Fargo and Trust Company of San Francisco, was made payable to "200" Motors and Keith Walton Body Shop. On April 16, 1959, Holder presented the draft to defendant's branch bank in Brigham City, Utah, which accepted the same and made a credit to the account of "200" Motors for the full amount thereon. The endorsement of Keith Walton Body Shop was forged upon the draft, and it never received any proceeds from the draft. Pursuant to normal banking procedures, defendant bank forwarded the draft to Wells

Fargo for collection and received payment. Wells Fargo, of course, charged the amount of the draft to plaintiff's account.

Some time in May of 1959 Holder ceased doing business. In July of the same year he was indicted and arrested for violation of a federal law. He was released on bail on July 17, 1959, and apparently went to Atlanta, Georgia where he worked until February 8, 1960, when he was sentenced and committed to serve a term of 30 months.

In the meantime, Keith Walton Body Shop's claim was settled, on November 19, 1959, by City Finance in order to protect the latter's interest in the automobile. Then, on December 22, 1960, the finance company made demand of plaintiff for payment under the terms of the insurance policy. On November 30, 1961, plaintiff paid City Finance, but only after the latter had commenced suit. It was not until April 26, 1962, that plaintiff commenced the instant action.

At the pretrial conference it was determined that the only issue to be resolved was whether or not plaintiff had been guilty of laches. In this regard, it appears that City Finance was, prior to June 26, 1959, advised by plaintiff that it had issued the draft and that it would forward a copy of the same. It must be inferred therefore that City Finance had knowledge, or reason to believe, that the endorsement of Keith Walton had been forged prior to the time it made the settlement with Walton. However, it further appears that plaintiff did not receive notice of the forgery until January 19, 1961, when they were so advised by City Finance. Plaintiff made a request of City Finance to furnish samples of Walton's endorsement for comparison with that upon the draft. These samples were not furnished until March 9, 1961. Subsequently, on July 11, 1961, plaintiff made demand upon Wells Fargo for reimbursement of the amount of the draft. Wells Fargo then made a demand, through the Federal Reserve Bank, upon defendant which was refused.

Based upon the foregoing facts, the trial court found that City Finance had delayed an unreasonable length of time in notifying plaintiff of the forged endorsement and that such delay was detrimental to both plaintiff and defendant. It then concluded that, because of the delay, plaintiff had a valid defense to the claim of City Finance and that its payment of the latter's claim was a voluntary contribution rather than a legally compelled payment. We think the lower court erred.

■■ It is difficult to evaluate the merits of a law suit not here before us. However, it would seem that any delay of City Finance in notifying plaintiff of the forged endorsement is not controlling here. To begin with, City Finance was not a

party to the draft and had no duty to investigate the forgery. Its claim against plaintiff was based upon contract—the insurance policy. The claim was made within the statutory period.[1] Even if the suit of City Finance had gone to trial a defense of laches by the plaintiff would have been of no avail (absent possible facts not before us) because the statutory period of limitations would govern.[2] Furthermore, any unreasonable delay by City Finance could not be imputed to plaintiff upon the theory that there was a "privity" between them as regard the insurance contract, but not as to the draft which is the subject of this action. Plaintiff's cause of action against the defendant is founded upon an implied contract to the effect that a bank which accepts a draft on a forged endorsement and collects from the drawee bank is liable to the drawer thereof for his loss.[3] The action was brought within the statutory limitation.[4]

It being established that plaintiff cannot be charged with responsibility for City Finance's delay in advising of the forged endorsement, and the lower court having failed to find that plaintiff was guilty of such laches as might preclude it from re-

covery, the decision of the lower court must be reversed. Costs to plaintiff.

HENRIOD, C. J., and McDONOUGH, CROCKETT, and WADE, JJ., concur.

---

1. 78–12–23, U.C.A.1953 (six years).
2. Fisher v. Davis, 77 Utah 81, 291 P. 493 (1930).

3. 102 A.L.R. 145; 9 C.J.S. Banks and Banking §§ 254, 356, pp. 528 & 738; Railroad Building, Loan & Savings Association v. Bankers' Mortgage, 142 Kan. 564, 51 P.2d 61, 102 A.L.R. 140.
4. 78–12–25, U.C.A.1953.