COMMERCIAL CREDIT CORPORATION, a Corporation

*v.*

CITIZENS NATIONAL BANK OF POINT PLEASANT, WEST VIRGINIA, a Corporation

(No. 12414)

Submitted September 14, 1965.   Decided November 2, 1965.

*A. Maurice Foose, Carroll W. Casto,* for appellant.

*Jenkins & Jenkins, Hyer & Littlepage,* for appellee.

BERRY, JUDGE:

This is an action instituted in the Circuit Court of Mason County by the Commercial Credit Corporation against the Citizens National Bank of Point Pleasant, West Virginia, to recover damages from the defendant Bank in connection with several checks issued by the plaintiff on its accounts at two banks, on which checks the endorsements of the payees were later forged prior to their being deposited in defendant Bank. The checks in question were forwarded by the defendant Bank to the banks upon which they were drawn and were paid by said banks. The defendant Bank timely filed its answer setting up the defenses that: "The endorsement of the respective payees names caused to be written on each of the checks herein concerned was authorized by each respective payee. * * * The defendant owes the plaintiff nothing by reason of the checks listed in the complaint." The defendant filed a motion for a summary judgment under Rule 56, R.C.P., and sworn statements were filed in support thereof. The plaintiff opposed the motion for summary judgment and filed affidavits and depositions in support of its opposition to said motion. The trial court sustained the defendant's motion for a summary judgment and final judgment was entered thereon on January 16,

1964. An appeal was granted from said judgment by this Court on December 14, 1964.

The defendant's motion for summary judgment contained the following grounds in support thereof:

"1. The pleading shows that the plaintiff is not a holder in due course.

"2. The guarantee of an endorser, whether expressed or as a result of an action under the Uniform Negotiable Instruments Act, goes only to a holder in due course.

"3. There is no cause of action set out in the plaintiff's complaint except on the theory of the defendant as an endorser, and this cause of action is not available to the plaintiff as the drawer of the checks.

"4. Under any cause of action which might be available to the plaintiff against defendant under any theory, recovery would be limited to the damages sustained by the plaintiff and the direct result of any such cause of action, and the plaintiff does not allege any loss or damage to it.

"5. Plaintiff has received in full the anticipated consideration for the funds represented by the various checks, and each payee received the funds intended for it."

After this motion was filed, the plaintiff moved to the trial court for leave to file an amended complaint setting up new material not contained in the original complaint relative to conditions under which the checks involved were issued and alleging fraud in connection therewith. The trial court refused to allow the amended complaint to be filed or considered, giving as its reason that the amended complaint was filed after defendant's motion for a summary judgment was filed and submitted to the court. The defense set up in the defendant's answer was that the endorsements of the payees on the respective checks was authorized by each payee. The sworn statements or affidavits in connection therewith were to the effect that they were unauthorized and forged.

It is true that after a responsive pleading is served leave of the court or written consent of the adverse party must be obtained in order to amend the pleadings. However, when justice so requires leave shall be freely given by the court. Rule 15 (a) R. C. P.

It would appear that leave should have been granted by the trial court to file the amended pleading tendered by the plaintiff, regardless of whether it would be considered in the disposition of the case.

The issue involved in the case at bar is whether the drawer of a check can recover from a collecting or intermediary bank wherein the check with a forged endorsement was deposited and then forwarded by it through usual channels to the drawee bank which charged said check to the account of the drawer, the plaintiff herein. It is not disputed that drawer could have sued the drawee bank in a proper case, which then could have sued the collecting bank, but it is contended that a drawer cannot sue a collecting bank directly.

The plaintiff, Commercial Credit Corporation, is engaged in financing automobiles purchased by a dealer either from the factory or from other dealers. The plaintiff had been doing such financing business for about ten or twelve years with the Somerville Motors, Incorporated, an authorized Ford dealer in Point Pleasant, West Virginia. The Ford dealers in that area followed a custom of obtaining automobiles from each other when needed. This arrangement was approved by the Commercial Credit Corporation and the cars obtained by the dealer were financed by it in much the same manner as were the cars obtained from the factory. The procedure followed was that the Commercial Credit Corporation would obtain a factory invoice from the selling dealer and issue a check to the order of the selling dealer to pay for the car, in return for which the buying dealer, in the case at bar the Somerville Motors, Incorporated, obtained possession of the automobile and gave a conditional sales contract to the Commercial Credit Corporation showing a purchase from the Commercial Credit Cor-

poration as owner whereby title to the car in question would be in the Commercial Credit Corporation for its protection until such time as said car was resold. This resulted in protecting the Commercial Credit Corporation by a lien for the amount of the check issued by it in payment of said automobile. New arrangements would be made when the car was sold to a later retail buyer by the Somerville Motors, to protect any financing in connection with the retail sale.

Where automobiles were obtained from the factory by the Somerville Motors and financed by the Commercial Credit Corporation, a trust receipt was taken and filed in the office of the Secretary of State to perfect a lien and protect the Commercial Credit Corporation in such financing. If a dealer such as the Somersville Motors paid for automobiles itself and desired to have the cars financed, it would be necessary for the finance company to obtain a chattel mortgage from Somerville Motors in order to have a valid lien on the automobiles financed, because the title would be in the dealer who paid for the automobiles and a conditional sales contract would not be appropriate. It was customary for finance companies to have their representatives check the financed automobiles at the dealer's establishment every two or three weeks in order to make an inventory of the automobiles and to determine whether or not they had been sold, and if one of the financed automobiles was missing and not paid for by the dealer an immediate payment would be demanded.

This action involves a series of nine transactions in which the Commercial Credit Corporation was requested to finance certain automobiles for the Somerville Motors to be purchased from other dealers in that area at the wholesale price, in accordance, as they were led to believe, with the arrangement or plan heretofore described, wherein the Commercial Credit Corporation issued its checks to the dealers from whom the cars were obtained as payees and obtained a conditional sales contract from the buying dealer, Somerville Motors, on the automobiles purchased with said check and recorded the conditional sales contract in the office of the Clerk of the County Court of Mason County wherein

was the place of business of the Somerville Motors where the cars were kept for sale.

All of the transactions involved in the case at bar occurred during December, 1961, and January, 1962, and were practically identical. During this period of time the Somerville Motors, instead of going first to the Commercial Credit Corporation to get a check, went to the other dealers and gave them its own check for the automobiles it desired to obtain. This, of course, was in violation of the arrangement in such cases and made Somerville Motors already the owner, and was unknown to the Commercial Credit Corporation. The Somerville Motors, after delivering its checks, took the invoices for the cars obtained from the other dealers and presented them to the Commercial Credit Corporation with a signed conditional sales contract for the automobiles purchased, purporting to show that Somerville Motors obtained possession from the Commercial Credit Corporation. The Commercial Credit Corporation then issued its checks payable to the dealers from whom the automobiles were obtained and gave the checks to the Somerville Motors to deliver to the dealers who were thought by the Commercial Credit Corporation to be entitled to them in payment for such automobiles. Instead of delivering the checks of the Commercial Credit Corporation to the dealers, Somerville Motors forged the name of the dealers to whom the checks were made payable on the back of the checks and deposited the checks to its own account in the defendant Bank. The defendant Bank then endorsed the checks with the usual stamp guaranteeing all prior endorsements and forwarded them through regular channels to the drawee banks, and the amounts of the checks in each instance were paid by the drawee banks to the defendant Bank. There were three other dealers involved in these transactions. Two of the dealers stated that they would have authorized the Somerville Motors to make such endorsements had they been requested to do so, but that as they had not been so requested, the endorsements in each instance were actually unauthorized and forged. A third dealer stated that he would not have authorized the Somerville Motors to endorse his firm

name on the checks and that the said endorsements on the checks were unauthorized and forged. The fact that two dealers stated they would have authorized the Somerville Motors to endorse their name on the checks had they known the situation does not in any way affect the forged endorsements contained on said checks. If these dealers knew, or should have known, of the arrangement with regard to the purchase of the automobiles in question and had authorized such endorsements, they would have been a party to the transaction along with the Somerville Motors wherein the arrangement or agreement under which the automobiles were purchased was violated resulting in the Commercial Credit Corporation being deprived of a lien on the automobiles in question, because it could not have a reserved title to a car that had already been sold to the Somerville Motors by another dealer.

At least three of the checks given to the other dealers by the Somerville Motors were returned marked "Insufficient Funds". In at least two instances the dealer repossessed the automobiles because the Commercial Credit Corporation had no lien on them. In one instance a dealer who had one of the checks of the Somerville Motors marked "Insufficient Funds" could not find the automobile or truck delivered to the Somerville Motors and took another one from its floor which was covered by a trust receipt of the Commercial Credit Corporation filed in the office of the Secretary of State, and it had to be returned. Some checks given to the Commercial Credit Corporation by the Somerville Motors for the automobiles in question obtained from the other dealers and sold by it were returned because of insufficient funds, and, of course, the Commercial Credit Corporation had no lien on such cars because the title was already in the Somerville Motors at the time Somerville signed a conditional sales contract purporting to buy them from the Commercial Credit Corporation.

The Somerville Motors became insolvent and very little could be collected from its assets.

The defendant's motion for summary judgment is based almost entirely on the Negotiable Instruments Act which is

contained in Chapter 46 of the Code of West Virginia, and all of the points raised by the defendant, when summarized, are to the effect that under the Negotiable Instruments Act, even though the defendant guaranteed the forged endorsement, it would not be liable to any one but a holder in due course, and the plaintiff who was the maker of the checks involved is not a holder in due course, that the payees were paid in full, that there was no allegation of any damage suffered by the plaintiff and that because the plaintiff turned its checks over to the Somerville Motors it was guilty of negligence and therefore cannot recover from the defendant Bank. The pertinent section of Code, 46-5-7, provides that endorsers are only liable to subsequent holders in due course on their warranties.

It is true that a drawer or maker of a negotiable instrument is not a "holder in due course" under the Negotiable Instruments Law and is not governed under the provisions thereof. 11 Am. Jur. 2d, Bills and Notes, §420 (1963); *Railroad Bldg., Loan & Savings Ass'n.* v. *Bankers Mortgage Co. et al.,* 142 Kans. 564, 51 p. 2d 61, 102 A.L.R. 140; *Metropolitan Life Ins. Co.* v. *San Francisco Bank et al.,* 58 Cal. App. 2d 528, 136 P. 2d 853; *Stone & Webster Engineering Corporation* v. *The First National Bank & Trust Company of Greenfield,* (Mass.) 184 N. E. 2d 358. Therefore, the plaintiff cannot maintain this action against the defendant Bank on the ground that it had guaranteed a forged endorsement under the Negotiable Instruments Law, and the defendant's contention relative thereto is well taken. However, the last section of Chapter 46 of the West Virginia Code, dealing with negotiable instruments, Code, 46-17-5, provides as follows: "In any case not provided for in this chapter the rules of law and equity including the law merchant shall govern." There is no question but that the maker or drawer, in this instance the plaintiff, can sue the drawee bank or banks and recover the amount of the checks paid by the drawee bank to the intermediary bank, the defendant herein, by virtue of the forged endorsement of the payee unless the drawee banks presented a valid defense.

There is also no question but that the drawee banks could sue the intermediary banks and recover in such a case under the Negotiable Instruments Law. Therefore, the question presented in the case at bar is whether or not the drawer or maker can itself sue and recover from an intermediary bank under the rules of law and the law merchant not provided for in the Negotiable Instruments Law. Code, 46-17-5. In other words, can the drawer sue and recover from some bank behind the drawee bank in the chain of transfer of the instrument?

There is a split of authority in connection with this question, although the majority of cases hold that the drawer can sue the collecting or intermediary bank on implied contract for money had and received and omit suing the drawee bank, thus relieving the necessity of circuity of actions. 102 A.L.R., Annot., 145, (1936); *Home Indemnity Co. of New York* v. *State Bank of Fort Dodge*, 233 Iowa 103, 8 N. W. 2d 757; *National Surety Corporation* v. *City Bank & Trust Co.*, 248 Wis. 32, 20 N. W. 2d 559; *Railroad Bldg., Loan & Savings Ass'n.* v. *Bankers Mortgage Co. et al.*, 142 Kans. 564, 51 P. 2d 61, 102 A.L.R. 140; *New York Cas. Co.* v. *Sazenski*, 240 Minn. 202, 60 N. W. 2d 368; *First Nat. Bank of Kansas City* v. *Produce Exchange Bank of Kansas City*, 338 Mo. 91, 89 S. W. 2d 33.

It was held many years ago in England that a drawer of a negotiable instrument could sue and recover from a collecting bank. *North and South Wales Bank* v. *Macbeth*, 77 L.J.K.B. (N.S.) 464, (1908) (H.L.), which is officially reported in Law Reports 1908.

The leading case holding that a drawer of negotiable instruments cannot sue an intermediary or collecting bank is the Massachusetts case of *Stone & Webster Engineering Corporation* v. *The First National Bank & Trust Company of Greenfield*, (Mass.) 184 N. E. 2d 358. This case recognizes the divisions of authority and cites cases holding both ways. The reason given for not allowing a recovery is because the maker is not a holder in due course under the Negotiable Instruments Law, which, as we have stated

herein, is true. It should be noted that in the *Stone &
Webster* case, and most of the cases cited as not allowing
an action to be maintained on the part of the maker of an
instrument, the endorsements were made by dishonest em-
ployees of the maker and negligence in connection there-
with was involved. The *Stone & Webster* case also gave as
a reason that in such cases defenses might be difficult for
collecting bank to assert. We do not agree with this rea-
soning and are of the opinion that justice would be better
served by allowing the maker to institute an action against
an intermediary bank where forged endorsements on ne-
gotiable instruments are involved, and we think that the
majority view allowing such actions is the better view.

This matter is discussed in 10 Am. Jur. 2d, Banks, § 629,
(1963), where it is stated:

> "Although not agreeing uniformly in the rea-
> sons given for their decisions, most courts hold as
> a general rule that an intermediary bank which
> receives a check on a forged indorsement and col-
> lects it from the drawee bank is liable to the drawer
> of the check for his loss, the bank's acceptance of
> the check for collection being at its peril as to a
> possible forged indorsement."

The following statement in connection with this question
is found in 9 C.J.S., Banks and Banking, §254 (1938): "It
is well established that a drawer has a right of action against
a bank collecting an instrument with a forged endorse-
ment."

The defendant also contends that no cause of action is set
out in the complaint of the plaintiff except on the theory of
defendants being liable on an endorsement under the Nego-
tiable Instruments Law, that no damage to the plaintiff is
indicated, that each payee has received the funds intended
it; and that the plaintiff was guilty of negligence in turning
over the checks to the Somerville Motors or is estopped
from asserting a cause of action.

The allegations contained in both the complaint and
amended complaint are sufficient to support an action based
on implied contract for money had and received. There-

fore, there is no merit to this contention. The other matters deal with defenses that could be set up by defendant Bank in the trial of the case on its merits as there appears to be a genuine issue of fact relating to such matters, and where this is present a case cannot be disposed of on a motion for summary judgment under Rule 56 R.C.P. as was done in the instant case. *Aetna Casualty & Surety Co.* v. *Federal Ins. Co. of N. Y.*, 148 W. Va. 160, 133 S. E. 2d 770; *Hatten, Admr.* v. *Mason Realty Company*, 148 W. Va. 380, 135 S. E. 2d 236. The affidavits and depositions contained in the record of this case indicate that the plaintiff has suffered considerable damage by virtue of issuing checks to the various payees, on which the Somerville Motors forged endorsements, by virtue of the fact that the checks of the Somerville Motors given to the plaintiff Commercial Credit Corporation were returned marked "Insufficient Funds", Somerville Motors became insolvent, and plaintiff had no lien on the cars. Similarly, several of the checks given by Somerville Motors to the payees named in the Commercial Credit Corporation's checks were returned uncashed by banks. These losses would indicate that not only did the Commercial Credit Corporation suffer damages in connection with the checks upon which the payee's name had been forged by the Somerville Motors but also some of the payees did not receive funds intended for them from Somerville Motors. In any event, the payees did not receive the proceeds from the checks issued by the Commercial Credit Corporation, and in such cases the drawer of a negotiable instrument will not be precluded from recovery. Even the fact that the forger of an endorsement on a check pays the amount of the check to the payee does not necessarily relieve the bank of its liability to the drawer or payee on such endorsement. 10 Am. Jur. 2d, Banks, §625 (1963). Some loss still may have been suffered by the maker, a question to be resolved by a trial.

The questions of estoppel or negligence are defenses which we think are available to an intermediary bank in such cases as the one at bar, but must be properly raised in the pleading and sufficient proof introduced during the

trial of the case on its merits to warrant a defendant bank prevailing on such defenses. Sufficient facts are not present in the record on this appeal to support defenses on these grounds. It should be pointed out that the second defense set out in defendant's answer that the endorsements of the respective payees were authorized by each payee is not only not supported in any manner but is clearly shown to be without merit in the affidavits of the defendant.

For the reasons enunciated herein, the judgment of the Circuit Court of Mason County is reversed, and the case is remanded with directions to allow the plaintiff to file its amended complaint and to set the case for trial on its merits on the issues raised by the complaint and answer filed.

*Reversed and remanded, with directions.*